James G. **ELLISON** et al., Appellants,

v.

H. M. **McGLAUN** et al., Appellees.

No. 8267.

Court of Civil Appeals of Texas, Amarillo.

June 5, 1972.

Rehearing Denied June 30, 1972.

Stokes, Carnahan & Fields (Robert N. Carnahan), Amarillo, for appellants.

Gibson, Ochsner, Adkins, Harlan & Hankins, Jewett E. Huff, Amarillo, George J. Jennings, Sr., Tulia, for appellees.

ON MOTION FOR REHEARING

REYNOLDS, Justice.

Appellees' motion for rehearing is granted, and our opinion released on May 1, 1972, is withdrawn.

■ While the motion for rehearing was pending, appellees were granted leave to file a supplemental transcript. An examination of this transcript reveals matters that were not before, and could not have been considered by, the trial court at the time its judgment was rendered; therefore, the supplemental transcript has not been considered in the disposition of this appeal.

Appellants James G. Ellison, George D. Hipp and Troy Burson present this appeal from a summary judgment rendered in favor of appellees H. M. McGlaun and George J. Jennings. Appellants' suit grounded in the fraudulent concealment of a $10,000.00 indebtedness asserted against certain property they purchased, and for $10,000.00 resulting damages, and alternatively for a declaration of the nullity of the indebtedness and the deed of trust securing payment of the same, was summarily determined against them; summary judgment establishing the amount of indebtedness and granting foreclosure of the deed of trust lien was rendered for appellees. Appellants' one designated point of error is that the trial court erred in rendering summary judgment for appellees and not for appellants, and alternatively that there are fact issues to be tried. Affirmed.

The record reveals that appellee H. M. McGlaun and N. H. Baldwin had formed a partnership to sell and service farm machinery, and later McGlaun, Baldwin and George Jennings, Jr., incorporated the business as Tulia Machinery Co., Inc., but no corporate stock was issued. McGlaun owned Lots Seven through Ten (7–10) and Twenty-three through Thirty-two (23–32) in Block Two (2) of the Santa Fe Addition to the Town of Tulia, in Swisher County, Texas. The intricate progression of events culminating in the summary judgment was inaugurated on January 1, 1960, when McGlaun and his wife conveyed an undivided one-half interest in this real property to N. H. Baldwin for $10,000.00, payment of which was deferred. The conveyance was by warranty deed in which the vendor's lien was reserved to secure the payment of Baldwin's debt evidenced by his $10,000.00 vendor's lien note, bearing interest at the rate of six per cent (6%) per annum, and payable to the order of McGlaun on or before ten (10) years after date. It was contemplated that Baldwin would pay the deferred purchase price consideration by payments made from his income from the business, but no payments were made. Baldwin and his wife executed a deed of trust dated January 1, 1960, to further secure the payment of the purchase price indebtedness.

On August 8, 1960, McGlaun and Baldwin, joined by their wives, executed a warranty deed conveying the lots, subject to the deed of trust executed by Baldwin and his wife, to the corporation. Both warranty deeds, together with an agreement executed by McGlaun on October 19, 1960, reciting the $10,000.00 note and vendor's and deed of trust liens and subordinating them to a proposed first lien to be given on the corporate property to The First National Bank of Tulia, Texas, were recorded on October 24, 1960. The deed of trust was not then recorded.

The corporation's business did not prosper as anticipated. The three incorporators entered into a written agreement dated

March 27, 1961, to which the corporation was made a party, with Oscar Weaks and appellants George D. Hipp and Troy Burson. The agreement specified that no corporate stock had been issued and then provided for the conveyance to the corporation of the interest of the three incorporators in the corporation, after which Baldwin and Jennings, Jr., would own no interest therein. The instrument recognized that there were corporate debts and obligations, including a Dealers Sales Contract and Purchase Agreement with a farm machinery manufacturer for which certain of the signatories were personally liable, and stated that the authorized corporate stock would be issued in amounts to be determined to McGlaun, Weaks, Hipp and Burson. The instrument agreed to hold Baldwin harmless from liability under the Dealers Sales Contract and Purchase Agreement. The document then provided:

"For the same consideration, Tulia Machinery Co., Inc., H. M. McGlaun, Oscar Weaks, George D. Hipps (sic), and Troy Burson do hereby release H. N. (sic) Baldwin and George Jennings, Jr. from any liability of any kind or character to said corporation or to said persons individually from any claim of any kind made by the said corporation or said persons individually against H. N. (sic) Baldwin and George Jennings, Jr."

The instrument further provided for the execution of all instruments necessary to the full execution of the agreement.

By warranty deed dated July 30, 1964, and recorded on November 23, 1964, the corporation conveyed the lots described above to Hipp and Burson. This deed made no reference to the $10,000.00 vendor's lien note, the vendor's lien or the deed of trust. In late 1965, Hipp and Burson entered into negotiations with appellant James G. Ellison for the sale and purchase of the lots. Under date of December 10, 1965, attorney George J. Jennings, Jr., prepared a written title opinion directed to Ellison, listing among other title objections the vendor's lien retained in McGlaun's January 1, 1960 warranty deed as an objection to Hipp and Burson's title and requiring a release thereof. Subsequently, on December 22, 1965, Ellison, Hipp and Burson met in attorney Jennings' office and Hipp and Burson executed a letter agreement addressed to Ellison acknowledging the completed sale and that they were unable at that time to furnish Ellison a release of the vendor's lien. In the letter, Hipp and Burson agreed to furnish a release of the vendor's lien within 60 days or, if necessary, to clear the title by a trespass to try title suit filed at the end of the 60-day period, without cost to Ellison, and further agreed to hold Ellison harmless from liability that might arise out of the note and lien.

The vendor's lien not having been released, Hipp and Burson, at Ellison's insistence and with his knowledge, instituted suit under cause no. 4625 against McGlaun in January, 1967. Thereafter, an undivided one-half interest in the $10,000.00 vendor's lien note and the lien or liens securing payment of the same was sold, transferred and assigned to appellee George J. Jennings as revealed by an instrument recorded on February 10, 1967. The deed of trust dated January 1, 1960, was filed for record on February 13, 1967, and recorded on February 20, 1967.

On March 4, 1967, Hipp and Burson filed their first amended petition. The pleading alleged that the lien claimed against the property by virtue of the $10,000.00 vendor's lien note was extinguished by the warranty of unencumbered title in the deed dated August 8, 1960, conveying the property to the corporation and by the March 27, 1961 agreement. The petition sought removal of McGlaun's asserted lien as a cloud on the title, and recovery of $10,000.00 in damages for McGlaun's failure to release the lien because it prevented Hipp and Burson from unobstructed use, partition or sale of the property. McGlaun's answer to the suit included special exceptions, a general denial, special denials, and the special de-

fenses that the vendor's lien note, vendor's lien and deed of trust were valid and that it was not the intention of the March 27, 1961 agreement to operate as a release of any encumbrance then existing against the corporate property. The parties submitted the cause to the trial court sitting without a jury, and the trial court acted on McGlaun's special exceptions. Among McGlaun's special exceptions was one alleging that the petition was not sufficient in law "in that it fails to allege ownership, or any right, title or interest of Plaintiffs in said property at the time of the institution of this suit, sufficient to warrant this Court to interfere or assume jurisdiction of the matters of which Plaintiffs complain." Parenthetically, there is injected the fact that at this point in time, Hipp and Burson had conveyed all of their interest in the realty to Ellison and had committed themselves to securing a release of or removing the lien at no expense to, or liability on, Ellison. The trial judge sustained the exception and granted leave to amend. If a trial amendment were filed, the record before us does not include it.

Thereafter, on August 28, 1967, the trial court signed and entered its judgment reading, in part:

"*  *  *  the matters of fact as well as of law, were submitted to the court without the intervention of a jury, and the court having heard the pleadings, the evidence and the argument of counsel, and, being fully advised in the premises, finds that this is an action to Quiet Title and for Damages, *  *  *  and the Court is of the opinion that the following Judgment should be rendered herein, as follows:

"'Judgment for the Defendant; that the Plaintiff take nothing.'"

The trial court then ordered, adjudged and decreed judgment for McGlaun against Hipp and Burson, and that Hipp and Burson take nothing. Hipp and Burson's notice of appeal was incorporated in the judgment, but the appeal was not perfected and the judgment became final.

By letter dated October 19, 1967, Jennings advised Baldwin, Ellison, Hipp and Burson of his ownership interest in the note and liens, and for himself individually and as attorney for McGlaun declared the payment of the note accelerated, demanded payment, and stated the deed of trust lien was subject to foreclosure upon non-payment of the note. This demand was made by virtue of asserted defaults in providing insurance coverage and payment of taxes on the property as required by the deed of trust.

On February 2, 1968, Ellison filed suit under cause no. 4739, from which this appeal originated, against McGlaun and Jennings and the substitute trustee, Virgil Pohlmeier, reciting the lots had been posted for sale to be held on February 6, 1968, under the deed of trust, and seeking a temporary restraining order, a temporary injunction, and upon final hearing a declaration that the lien was void. A temporary restraining order was issued without notice enjoining the advertised sale and a date was set for a hearing on the temporary injunction. McGlaun, Jennings and Pohlmeier filed their answer of general denial and not guilty. On March 14, 1968, Hipp and Burson filed in the cause a plea of intervention, although leave of the court therefor is not shown of record. The pleading alleged that the $10,000.00 indebtedness was fraudulently concealed from them when they purchased the corporate property; a determination of the validity of the promissory note as a lien on the property was requested, and $20,000.00 was sought as exemplary damages in the event the note was held to be a valid lien. Following a hearing on March 19, 1968, the trial court granted a temporary injunction, restraining and enjoining the deed of trust sale.

Thereafter, no action was taken in the suit until March 25, 1971, when Ellison, Hipp and Burson filed their first amended petition, naming Baldwin, McGlaun and Jennings as defendants. The petition al-

leged that on March 27, 1961, Hipp and Burson "purchased all the outstanding stock" in the corporation and the "stock at such time was owned by H. M. Mc-Glaun"; that McGlaun fraudulently concealed the $10,000.00 indebtedness in the financial statements and reports submitted, and they "did not learn of it for several years thereafter"; and that they are entitled to recover from McGlaun their damages in the sum of the $10,000.00 "difference in the value of the corporate stock as represented by" McGlaun and "its value in the condition it was in when delivered," with interest. Alternatively, the petition alleged the note and deed of trust were cancelled and declared void "by the reconveyance of the corporate stock owned by Defendants H. M. McGlaun and N. H. Baldwin when Baldwin, the maker of such note, reconveyed his interest in such corporate stock to Defendant McGlaun," and prayed for judgment to that effect.

McGlaun and Jennings answered and, among other pleadings, specifically pleaded the two and four years statutes of limitations, and res judicata and estoppel by judgment entered in cause no. 4625. McGlaun and Jennings filed their cross-action on the note, which then had matured by its terms, and prayed for judgment thereon and for foreclosure of the liens securing payment of the indebtedness. Both parties then filed motions for summary judgment. In addition to the pleadings and instruments referred to above, the trial court had before it the depositions of Ellison, McGlaun and Baldwin and affidavits from attorneys George J. Jennings, Jr., George J. Jennings, Mattie B. Evans, and George S. McCarthy when the motions for summary judgment were heard. The trial court permitted Hipp and Burson's intervention in the suit, discharged Baldwin, dissolved the temporary injunction theretofore ordered, denied appellants' motion, and granted appellees' motion, computed the amount due under the terms of the note but specified that no personal liability attached, and decreed foreclosure of the deed of trust lien.

The undisputed summary judgment proof establishes the execution of the vendor's lien note and the deed of trust, and that the note is due and unpaid. As a matter of law, appellees are entitled to summary judgment decreeing the amount of the indebtedness and foreclosure of the lien, unless it can be said that appellants are entitled to have the lien released, or to recover on their alleged action for fraud, or that unresolved material fact issues are presented.

The summary judgment does not state the basis for the trial court's determination of the absence of genuine issues of material fact and appellees' right to judgment as a matter of law; however, appellants submit that the trial court must have applied the doctrine of res judicata and the two year statute of limitation, and appellees have responded in these premises. Appellants argue that the doctrine of res judicata does not apply in this proceeding because the summary judgment record reveals that (1) there was not the required identity of party plaintiffs in cause no. 4625 and in this cause no. 4739, and (2) the same matters were not involved in the two lawsuits, or there is a question of material fact as to what matters were involved in the two proceedings. Appellants argue further that the two year statute of limitation could not summarily bar their cause of action for fraud because (1) a question of fact is presented as to when appellants knew, or should have known, that McGlaun would not release the lien, and (2) the statute of limitation could not run against the $10,-000.00 offset claimed by appellants against the foreclosed indebtedness.

Early in Texas jurisprudence, our Supreme Court announced in Foster v. Wells, 4 Tex. 101, 104 (1849), the rule that the judgment of a court of competent jurisdiction shall be final, and a bar to another trial, as between the parties, not only as to the matters actually determined, but as to every other matter which the parties might have litigated and have had decided in the cause. This rule, which we speak of as the doctrine of res judicata,

with well recognized limitations, has been followed as the law of this state from that early time to the present date. See Abbott Laboratories v. Gravis, 470 S.W.2d 639 (Tex.Sup.1971). Appellants contend that the doctrine is inapplicable because Ellison owned the realty when Hipp and Burson, who were not then entitled to possession, filed cause no. 4625, and there was not in that cause that identity of the same party plaintiffs as in this cause no. 4739 which would constitute a bar to these appellants. While in cause no. 4625 the special exception to the status of plaintiffs Hipp and Burson to prosecute the suit was sustained and leave was granted to file a trial amendment, although no trial amendment is shown in this record, the trial court thereafter proceeded to hear the evidence and enter the judgment which has become final. Appellants' present contention of lack of requisite identity of the party plaintiffs in the two suits is a collateral attack on the judgment entered in cause no. 4625, Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325 (1895); Restatement of Judgments § 11, comment (a), and in such collateral attack, in the absence of forbidding circumstances not present here, it will be presumed that some other and sufficient pleading was filed. Reeves v. Houston Oil Co. of Texas, 230 S.W.2d 255 (Tex.Civ. App.—Beaumont 1950, writ ref'd n. r. e.); 34 Tex.Jur.2d Judgments § 350. The court looks beyond the nominal parties and treats all those whose interests are involved in the litigation and who control the action as real parties and hold them concluded by the judgment. Ex parte Foster, 144 Tex. 65, 188 S.W.2d 382 (1945). Cause no. 4625 was brought in compliance with the December 22, 1965 letter agreement between the appellants at Ellison's insistence, with his knowledge, in his behalf and for his benefit, and the final judgment entered there bound him as well as Hipp and Burson, to the same extent as if he were a nominal, as well as the real party, to the action. 34 Tex.Jur.2d Judgments § 393.

■ To establish that the issues in the two suits were different, or that a fact is-sue as to the matters involved was raised, appellants offered the affidavit of attorney McCarthy, the only attorney of record for Hipp and Burson in their first suit and one of the attorneys of record for appellants in the cause now on appeal. The affidavit states that the essence of the first suit was exclusively to remove a purported lien as being a cloud on the title to the property; that at no time was the theory of fraud in the purchase of the corporate stock ever raised; that the holding of the court in the first suit "establishes the validity of the Deed of Trust," which forms the basis of the second suit for fraud; that the two suits are on totally collateral matters; and that one does not form a bar to the bringing of the other. The affidavit, even uncontroverted, patently presents only an opinion and legal conclusions as to the issues involved in the two suits and is insufficient to establish the facts as a matter of law. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970).

■ The proper approach in deciding whether a former judgment is res judicata of a later suit between the same parties and those privy to the judgment is to determine from the record what matters of fact and law were involved. The record should speak for itself. Foster v. Wells, supra. This record reveals that in the first suit the indebtedness represented by the vendor's lien note and the liens securing payment thereof, together with appellants' claim to damages for failure to release the lien, were matters in issue. The vital issue was the validity of the indebtedness and liens, because the matter of damages, if any, was dependent on the liens not being valid. The execution of the vendor's lien note being judicially admitted by appellants, and no plea of payment being interposed, the validity and subsistence of the indebtedness and the liens could be overcome only by appellants proving their alleged release of the liens, and, absent release of the liens, the indebtedness, then, could be offset only by any damages proved to arise therefrom to the detriment of ap-

pellants, or which, through proper diligence, appellants might have presented and have had decided. The record shows that in cause no. 4625 there was a trial upon the merits and the court, after hearing the pleadings, the evidence and argument of counsel, entered its final judgment. Since the general rule in Texas is that the judgment, unless the contrary appears from the face thereof, disposed of all issues presented by the pleadings, Vance v. Wilson, 382 S.W.2d 107 (Tex.Sup.1964), the validity and subsistence of the indebtedness, represented by the vendor's lien note, and the liens further securing its payment, together with the denial of damages, were determined by that final judgment, which barred the re-litigation of these same matters alleged in this cause no. 4739 now on appeal.

Appellants declare, however, that the same amount of damages sought in the second suit was upon a theory—fraudulent concealment of the $10,000.00 indebtedness—different from that theory—failure to release the lien—injected in the first suit. Be that as it may, both suits were predicated upon the same subject matter, viz., the same indebtedness and the same liens. In 1884, our Supreme Court, in Nichols v. Dibrell, 61 Tex. 539, stated the doctrine of res judicata enunciated in Foster v. Wells, supra, in these words: "Or, as differently expressed, 'the plea of *res judicata* applies not only to points upon which the court was actually required to pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, by exercising reasonable diligence, might have brought forward at the time.' Aurora City v. West, 7 Wall., [82] 106 [19 L.Ed. 42]." That rule is currently applied in Texas, e. g., see Texas Employers' Insurance Ass'n v. Rampy, 392 S.W.2d 350 (Tex.Sup.1965), in all cases in which failure to use proper diligence is not caused by accident, excusable mistake, or fraud of the adverse party in preventing a ground of relief from being presented. Restatement of Judgments § 63. Any matter

which would have defeated the liens or offset the indebtedness could have been pleaded and proved by appellants with the use of proper diligence in the first case. Hence, appellants could have set up the fraudulent concealment allegation in the first suit. It is no defense to the failure to present the fraud claim in the first suit that appellants, as alleged in the second suit, "did not learn of it [the indebtedness] for several years thereafter," because as a matter of proven record, it was the knowledge of the liens securing the payment of the indebtedness that resulted in the filing of the first suit. That the plea for damages was based on contract in the first proceeding and on tort in the subsequent action does not justify separate actions, for the claims for damages may be joined either as independent or alternate claims. Rule 51, Texas Rules of Civil Procedure. In Texas jurisprudence, the criterion is the substance rather than the form of the action which entitles a party to any relief for which he shows a lawful reason. 1 Tex.Jur.2d Actions § 38. It is not the relief sought, but the matter alleged upon which the recovery proceeds, that creates the bar. Nichols v. Dibrell, supra. Whether McGlaun fraudulently concealed the indebtedness was a matter that properly belonged to the subject of the first litigation and no reason exists why it was not presented and decided. Having failed to use proper diligence in pleading and proving the matter in the first proceeding, appellants cannot now be heard on the issue. On any other principle than that stated herein, there would be no end to litigation over the same subject matter. To this end, the rule of res judicata becomes operative, for the law will not aid him who passes by his opportunity.

Were the action for fraudulent concealment of the indebtedness pleaded in this cause considered to be not concluded and barred by the final judgment entered in the first suit under a limitation to the rule of res judicata, the result of this litigation still would be the same. If the matter of fraudulent concealment were not

comprehended within the issues of the first suit, and it were deemed a separate cause of action available to appellants, that action is barred by the two year statute of limitation, Vernon's Ann.Civ.St. art. 5526, specifically pleaded as a defense by appellees. Art. 5526 is applicable to an action for damages based on fraud, and the cause of action accrues at the time the fraud is perpetrated, unless it is concealed or is unknown to the defrauded party; but in any case limitation under the statute commences at the time the fraud is discovered, or could have been discovered by the exercise of reasonable diligence, by the defrauded party. Quinn v. Press, 135 Tex. 60, 140 S.W. 2d 438 (1940). Even accepting appellants Hipp and Burson's premise that at the time of reorganization they were purchasing corporation stock and were not chargeable with notice of liens of record against the corporate property, nevertheless, when the title to the lots was conveyed to them individually by the warranty deed executed on July 30, 1964, they became constructively charged with notice of the existence and contents of the instruments of record constituting their chain of title, including the deed of trust that was not then recorded. The authorities establishing this rule are concisely collated in 59 Tex.Jur.2d Vendor and Purchaser § 752, where it is stated:

"The record of any duly proven or acknowledged instrument that is authorized or required to be recorded is constructive notice to all persons of the existence of such an instrument. To the person who is bound to search for it the record of a valid instrument connected with the chain of title is equivalent to actual notice. The record imports notice of the contents of the instrument as registered, and of any fact stated therein that would put a reasonably prudent man on inquiry.

"Accordingly, a purchaser of land must search the records as the primary source of title information, and he is charged with knowledge of the existence and contents of the recorded instruments affecting the title. * * * "

And in § 754 of the same text, it is written:

"The purchaser is charged with notice of the existence, contents, and legal effect of all instruments contained in his chain of title or connected therewith. He is bound by every reference and reservation, description, recital, and by every other matter contained in or fairly disclosed by any instrument that forms an essential link in the chain of title under which he claims. This is true regardless of whether the instrument is recorded or whether he has actually seen or read it, or has any knowledge of its contents."

When Hipp and Burson accepted the warranty deed to the lots, there were then recorded the deed from the McGlauns conveying an undivided one-half interest in this property to Baldwin and reciting the vendor's lien note and reserving the vendor's lien, the deed from the McGlauns and Baldwins conveying the property to the corporation subject to the deed of trust, and the subordination agreement of October 19, 1960, listing the deed of trust, although the deed of trust had not then been recorded. All of these instruments were essential links in the chain of title under which Hipp and Burson claimed and imparted constructive notice to them of the indebtedness. Thereafter, Ellison, the other appellant, had notice of the indebtedness through the title opinion of December 10, 1965. Indisputably, all appellants had actual notice of the indebtedness they alleged to have been fraudulently concealed on December 22, 1965, when Hipp and Burson executed the letter, addressed to Ellison, the subject

matter of which was the proposed release of the lien securing payment of the indebtedness. All of these dates were more than two years prior to March 14, 1968, the date of appellants' first pleading alleging fraudulent concealment of the indebtedness. Therefore, as a matter of law, appellants had notice of the indebtedness more than two years before they filed their cause of action for damages for fraud, and the cause of action was barred then by the two year statute of limitation.

The thrust of appellants' argument for the inapplicability of the limitation statute is that limitation did not commence running until Hipp and Burson realized that McGlaun did not intend to release the lien, thereby presenting a fact question as to when they knew, or should have known, that McGlaun would not release the lien, and precluding summary judgment against them on their asserted cause of action for fraud. Under the facts presented by this record, this theorem is not tenable. Appellants' pleaded cause of action was founded on fraudulent concealment of the *indebtedness*, not on fraud in the failure to release the lien. No more tenable is appellants' declaration that limitation could not run against their claimed offset to the foreclosed indebtedness. If the claimed offset is in the nature of a defense to the validity of the indebtedness and the liens, the final judgment in the first suit is a bar; if, on the other hand, the claimed offset is an independent cause of action, the statute of limitation is a bar. Morriss-Buick Co. v. Davis, 127 Tex. 41, 91 S.W.2d 313 (1936); 52 Tex.Jur.2d Setoff, Counterclaim, Etc., §§ 24–25.

The summary judgment proof established as a matter of law that there was no genuine issue of fact as to the essential elements of appellees' cause of action. Appellants' point of error is overruled.

The summary judgment of the trial court is affirmed.