Leon CHRISTIAN et al., Appellants,

v.

The FIRST NATIONAL BANK OF WEATHERFORD, Texas, Appellee.

No. 17648.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 7, 1975.

Rehearings Denied Dec. 19, 1975, Jan. 16, 1976.

Prager & Vogel, and Don L. Prager, Fort Worth, for appellants.

Fulgham, Grogan & Vick, and Mac Smith, Weatherford, for appellee.

## OPINION

SPURLOCK, Justice.

The First National Bank of Weatherford, Texas, brought an action to recover a deficiency judgment on three promissory notes alleged to have been executed by Weatherford Equipment Company, a partnership, and its partners, Leon Christian, Earl Ellis, C. W. Webb and Calvin Reynolds. Some of the notes made the basis for the suit were secured by a lien on personal property, pledged surrender value of life insurance policies, or by accounts receivable, all of which had been repossessed and sold by the Bank prior to the bringing of this suit.

Weatherford Equipment Company operated a business in the nature of a franchise agency for a farm implement company. The defendants answered by general denial. About three years later defendants, by amended answer, plead a general denial and various offsets, credits, cross-claims and counterclaims in defense of the suit, and Leon Christian filed a cross-action against the Bank for a money judgment.

When both sides had closed, the trial court withdrew the case from the jury and rendered judgment in favor of the Bank against each of the defendants and stated to the jury his reason for rendering judgment was that all the defenses of the defendants and the cross-action of Leon Christian were barred by limitations. The cause

of action against Calvin Reynolds was dismissed on motion of the plaintiff. Christian, Ellis and Webb have appealed.

The order of dismissal as to Calvin Reynolds is affirmed. The judgment against Christian, Ellis, and Webb is reversed and the cause remanded.

In summary form the record reflects that the Bank's cause of action was based upon three notes. Note No. 1 in the principal amount of $15,000.00 is dated November 19, 1968, and is signed Weatherford Equipment Company by Earl Ellis, Leon Christian and C. W. Webb, partners; Note No. 2 in the principal sum of $5,000.00 is dated May 15, 1970, and is signed Weatherford Equipment Company by Leon Christian; Note No. 3 is dated August 24, 1970, and is signed Weatherford Equipment Company by Leon Christian. The principal sum is mentioned in the note in one place as being $8,324.89 and in another place it appears to be $8,131.76. The Bank repossessed the collateral on January 9, 1970, and shortly thereafter sold same at private sale. The Bank's original petition was filed April 30, 1971, about four months after the repossession.

The defendants' answers, consisting of only general denials, were filed on May 24, 1971, and May 25, 1971. The defendants filed their first amended original answer and the defendant, Leon Christian, filed a cross-action on March 5, 1974. On November 20, 1974, defendants filed their amended answer detailing the matters plead in their original answer. Leon Christian also filed a cross-action on that date detailing the matters plead in his original cross-action.

Stated in summary form the defendants plead as follows: general denial; a denial under oath that the same partnership existed at the various times involved in this suit. The original partnership came into existence on November 21, 1968, and continued until March 1, 1969, when Calvin Reynolds became an additional partner. On July 11, 1969, E. R. Ellis withdrew from the partnership and Webb, Christian, and Reynolds continued the partnership until September 12, 1969, when C. W. Webb left the partnership. Thereafter Christian and Reynolds were the sole remaining partners until January 21, 1970, when Reynolds withdrew and a partnership was formed between Leon Christian and Jerry Hamilton which stayed in effect until June 29, 1970, when Jerry Hamilton withdrew and permanently left the state. Thereafter the business continued as a sole proprietorship owned by Leon Christian. The defendants plead that the various notes were secured by various goods, chattels and commercial paper; that on January 29, 1971, the Bank entered the place of business and took over their assets, including spare parts, farm machinery, tools, shelves, accounts receivable, records, books of account, permanent fixtures attached to the walls and structure of the building, and the value of which was not credited to the liability of the defendants; that on the date of the repossession Leon Christian was the sole proprietor and owner of the equipment and building involved.

The defendants plead that if the value of the chattels repossessed had been properly credited to their indebtedness there would be no liability but that the Bank would owe a balance to the defendants.

The answer then follows pleading in detail the various claimed credits, offsets and payments that had not been allowed, including a payment made to the Bank which the Bank applied to the debt of one of its customers instead of applying it to the debt of the defendants; that the sale of some collateral that should have been applied as a credit to Note No. 1 was applied to Notes 2 and 3, thus the Bank did not give proper credit to Webb and Ellis who had signed Note No. 1, but were not liable on Notes 2 and 3; that the Bank took property owned by John Deere Company that was in the possession of defendants on consignment resulting in that company taking judgment against two of the defendants and that the defendants had a cause of action against the Bank for indemnity and that the statute of limitations did not begin to run until Christian paid such judgment which was

within the statute of limitations. Defendants further alleged two similar transactions and claimed they had the right of indemnity; and various other sums that should have been allowed as payment or credits on the note that the Bank had not allowed; the Bank repossessed some tractors and heavy equipment and gave no accounting and allowed no credit; and did not sell the repossessed property in accordance with reasonable commercial practices.

Leon Christian, by a separate instrument, plead in his cross-action that the Bank had damaged his property and taken property not covered by a lien securing payment of the notes and prayed for actual and exemplary damages.

The record reflects that the pleadings had support in the evidence, raised a fact issue, and in some instances the Bank admitted the transaction.

The defendants, by their point of error No. 1, assert the court erred in instructing the verdict on the ground that the statute of limitations barred the defendants' defenses because said statute was not affirmatively plead by the Bank as required by Rule 94, T.R.C.P.

The court's action in withdrawing the case from the jury and rendering judgment for the Bank will be referred to as a "directed verdict". The pleadings of the defendants contained in their answer will be referred to as "defensive pleadings". The action by Leon Christian contained in a separate action in which he seeks actual and exemplary damages and recovery of the overpayments made to the Bank will be referred to as a "cross-action", although it is correctly described as a counterclaim. Rule 97, T.R.C.P.

The Bank's answer to the defendants' pleadings contained a general denial. In a separate paragraph of that answer the Bank plead the two and four year statutes of limitations to the cause of action plead by cross-plaintiff, Leon Christian.

The judgment recites that the plaintiff recover judgment for the balances due on the first note against Christian, Ellis and Webb, and against Leon Christian on the second and third notes. The judgment further provides that Leon Christian take nothing by his counterclaim.

The Bank caused to be included in a supplemental transcript the Bank's Special Exceptions 1 and 2, and "Copy of Special Exceptions # 1 (without file mark) With Judges Notations." In order to support the Bank's contention that it had plead the statute of limitations to the defenses a document entitled "Special Exceptions" to original answer and counterclaim was included. The unsigned, unfiled copy of said pleadings contain some handwritten notes in the margin indicating that special exceptions directed to defendants' first amended answer had been sustained or overruled.

This Court cannot consider such copy of pleadings that are unfiled and the notes in the margin not shown to have been made by the Judge.

The transcript further reflects that these special exceptions were exceptions directed to the defendants' first amended answer and counterclaim. These defensive pleadings were abandoned when defendants thereafter filed their second amended original answer. Rule 65, T.R.C.P.

In 46 Tex.Jur.2d 46, "Pleading", § 214, "Amendment as superseding original pleading", it is stated: "The earlier pleading is abandoned and passes out of the case, and may not be relied on by the parties, or looked to by the courts, except that it may be looked to by an appellate court on review of the ruling allowing the amendment and on any question as to the applicability of the statute of limitations."

It appears from the pleadings and the Bank's motion for instructed verdict that the Bank intended to plead the Statute of Limitations to any claim that Leon Christian might have had for money judgment against the Bank as distinguished from the matters plead by the defendants in defense of the Bank's cause of action.

Thereafter plaintiff filed special exceptions to only a portion of the pleadings of the defendants in which they claimed payments, offsets and credits on the ground that such defenses were barred by limitations. The record does not reflect that the court made any ruling on these exceptions.

Rule 94, T.R.C.P., provides in part as follows: "In pleading to a preceding pleading, a party shall set forth affirmatively . . statute of limitations . . . ."

■ Affirmative defenses must be pleaded and proved or they are waived. *Manes Const. Co., Inc. v. Wallboard Coatings Co., Inc.*, 497 S.W.2d 334 (Houston, Tex.Civ. App., 14th Dist., 1973, no writ hist.); *Young v. J. F. Zimmerman & Sons, Inc.*, 434 S.W.2d 926 (Waco, Tex.Civ.App., 1968, writ dism.); *Twin City Bowling Lanes, Inc. v. C. I. T. Corporation*, 376 S.W.2d 94 (Forth Worth, Tex.Civ.App., 1964, no writ hist.).

■ We hold that the defense of the statute of limitations was not available to the Bank, among other reasons, because it was not affirmatively plead as a bar to the defendants' defenses.

This point is sustained.

The defendants, by their points of error Nos. 3 and 4, assert the trial court erred in granting the Bank an instructed verdict on the grounds that the defendants' defenses of offsets, credits and payments were barred by the two year statute of limitation because the statute was not applicable and the defendants were entitled to such offsets, credits and payments.

■ In instances where the court directs a verdict, it is the duty of the appellate court to make a thorough examination of the entire record and consider the evidence that is favorable to the party against whom the verdict is rendered and discard all contrary evidence and inferences. *Triangle Motors of Dallas v. Richmond*, 152 Tex. 354, 258 S.W.2d 60 (1953).

This Court has carefully examined the entire record and finds that the pleadings of the defendants detailed above were amply supported by evidence in the record.

The Bank plead: All payments, credits and offsets were allowed. In support of these pleadings, during the course of the trial, the vice-president of the Bank testified that all credits and offsets that were due these men were given them pursuant to the Bank's arrangement with them.

The defendants offered ample evidence showing that the Bank had not allowed them all the payments, credits and offsets to which they were entitled.

*Southwestern Fire & Casualty Company v. Larue*, 367 S.W.2d 162 (Tex.Sup., 1963) is a case in which a summary judgment was granted in behalf of the holder of a note. Judge Calvert, in a dissenting opinion, stated on page 167 as follows: "Thus if Larue had defaulted in this case, the trial court could not have rendered the judgment it did render absent production in evidence of the note and *testimony showing payments and credits* supporting the judgment." (Emphasis ours.) On page 168 the court indicates that there was an issue of the correctness of the amounts sued for and this had been put in issue by a general denial. This point had not been raised in the Court of Civil Appeals and therefore the majority of the court were of the opinion it could not be considered by the Supreme Court. The above case was discussed in *Texas Nat. Corp. v. United Systems Internat'l, Inc.*, 493 S.W.2d 738 (Tex.Sup., 1973).

In *Alexander v. Houston Oil Field Material Company*, 386 S.W.2d 540 (Tyler Civ. App., 1965, ref., n. r. e.), that court stated: "As in all other types of suits, a general denial in a suit upon a note puts in issue all matters pleaded by the plaintiff which are not required to be denied under oath. 9 Tex.Jur.2d 292. A general denial thus undoubtedly puts in issue allegations that the plaintiff is the owner or holder of the note, that the same is due together with the *amount due and owing thereon*. Proof of these matters is essential to the right of recovery. Neither the Negotiable Instru-

ments Act nor the Rules of Civil Procedure require that any of them be denied under oath before they can be disproved. Traverse of them is not an affirmative defense to be specially pleaded under Rule 94, T.R. C.P." (Emphasis ours.)

The defendants not only filed a general denial but also plead in great detail the various credits and payments they claim were not credited to the indebtedness.

The record is replete with testimony to the effect that valuable items were sold for very nominal sums such as $5.00 when they could have been sold to other dealers in the area for sums equal to their fair market value, less a reasonable discount; that the cash surrender value of the life insurance policies pledged to the Bank for security on Note No. 1 was credited to Notes 2 and 3 although Webb and Ellis were not liable on Notes 2 and 3; the Bank did not give the defendants credit for all of the monthly payments made on the notes; that the Bank has not accounted to the defendants for the sums received from the sale of tractors and other heavy equipment and various other credits which had not been allowed by the Bank; and that the aggregate offsets and credits amounted to $50,109.79 and that the total liability on the notes, after all monthly payments had been credited and prior to the repossession, was the sum of $24,591.13, rather than the amount alleged by the Bank.

Without engaging in an extensive discussion of the opinions of the courts relative to esoteric distinctions between the terms, "credits", "offsets", "payments", "counterclaims", "cross-action", "recoupment", "compensation", "Third party claims", "setoff", "reconvention", and "cross-claims", the court is of the opinion that Rule 71, T.R.C.P., "Misnomer of Pleading", has application and provides in effect that the courts will look to the substance of the pleadings and will consider them as if they had been properly designated. Pursuant to the intent of this rule, many of the courts have used some of these terms or a combination of them synonymously. We must look to the substance of the pleadings to determine the applicability of the statute of limitations.

In *Shaw v. First State Bank*, 13 S.W.2d 133 (Fort Worth, Tex.Civ.App., 1928, no writ hist.), this Court well stated the rule as follows: "Limitation is applicable to the remedy and not the right. The right, as distinguished from the remedy, is often available in equity as a defense, when the remedy for its enforcement would be barred, if they asserted affirmatively in a legal action. *Fievel v. Zuber*, 67 Tex. 275, 3 S.W. 273; *Goldfrank, Frank & Co. v. Young*, 64 Tex. 432; *Smith v. Fairbanks, Morse & Co.*, 101 Tex. 24, 102 S.W. 908."

The rule is again sell stated in 78 A.L.R. 1074 as follows: "The purpose of statutes of limitation is to bar actions and not to suppress or deny matters of defense, whether legal or equitable; and it is a general rule that such statutes are not applicable to defenses, but apply only where affirmative relief is sought." This annotation cites 19 Texas cases in support of the above rule.

In *Birk v. Jackson*, 75 S.W.2d 918 (Eastland, Tex.Civ.App., 1934, writ dism.) plaintiff brought suit for commissions due under a contract with the defendant. The defendants, by way of cross-action, alleged a setoff in that plaintiff had converted cotton belonging to defendants and also the proceeds of certain notes which he had collected for the defendant. The acts of conversion occurred more than two years prior to the filing of the cross-action. Plaintiff contended that they were barred because of limitations. Plaintiff brought his suit one year after the alleged acts of conversion, thus defendants' claims were not barred by limitations when plaintiff filed his suit. That court held that since defendants' claims were not barred by limitations when plaintiff filed his suit, even though they would have been barred in an independent suit at the time defendant filed his cross-action, such defenses were not barred by limitations and the claims became offsets by operation of law.

Where there are mutual debts held by the respective parties, and the defendant's debt is not barred by limitations at the time plaintiff's suit is instituted, defendant may oppose his debt as an offset to plaintiff's demand, even though it might be barred as a basis of an independent suit at the time the answer was filed. *Walker v. Fearhake*, 22 Tex.Civ.App. 61, 52 S.W. 629 (1899); *Nelson v. San Antonio Traction Co.*, 107 Tex. 180, 175 S.W. 434 (1915); *Stewart v. Minton*, 464 S.W.2d 499 (Eastland, Tex. Civ.App., 1971, ref., n. r. e.).

In *Shaw v. Faires*, 165 S.W. 501 (Dallas, Tex.Civ.App., 1914, no writ hist.) that court stated: "Without attempting to discuss the fundamental reasons underlying the rule, it may be said to be settled that if, at the time the plaintiff files his suit, the defendant is the owner of a subsisting counterclaim, As contemplated by the statute, which at said time is not barred by the two years' statute, the fact that the bar is completed before the counterclaim is urged in a proper pleading will not deprive defendant of the right to set off such counterclaim against plaintiff at any time during the progress of the suit. Such result is not true because of any suspension of limitation, but on the principle that such mutual accounts extinguish one the other pro tanto whenever plaintiff declares upon his demand. *Crook et al. v. McGreal et al.*, 3 Tex. 487; *Holliman v. Rogers*, 6 Tex. 91; *Walker v. Fearhake*, 22 Tex.Civ.App. 61, 52 S.W. 629. But, in the application of the rule, it is also clear that, if the defendant did not assert his counterclaim until after the expiration of two years from the time of its accrual, *he would not be entitled to recover thereon for any excess in his counterclaim over the plaintiff's demand.*" (Emphasis ours.)

In *Machac v. Hajek*, 437 S.W.2d 325 (Corpus Christi, Tex.Civ.App., 1968, ref., n. r. e.) that court stated: "It is also well settled that the statute of limitations is not applicable to matters set up strictly by way of defense. If the subject matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate merely as a negation of the plaintiff's right to recover, the statute of limitations does not apply. *Morriss-Buick Co. v. Davis*, 127 Tex. 41, 91 S.W.2d 313 (1936); *Murphy v. Sills*, 268 S.W.2d 296 (Tex.Civ.App., Beaumont, 1953, writ dism.); Texas Practice, Vol. 5, Sec. 793, page 233."

In *Preston v. Williams*, 427 S.W.2d 157 (Eastland, Tex.Civ.App., 1968, no writ hist.), that court held that a counterclaim to a builder's action on a note, by which the owner sought credit or offset because of defects in the residence built by the builder, was not an independent cause of action and was not barred by statute of limitations.

It is our opinion that the defenses of offsets, credits and payments as alleged and proved by defendants are not barred by limitation under the facts in this case.

These points are sustained.

Defendants, by their point of error No. 2, assert that the trial court erred in finding no fact question existed and withdrawing the case from the jury and granting judgment for the Bank in that the offsets and credits arising out of a non-commercially reasonable sale established a fact question for the jury.

There is ample evidence in the record to the effect that the repossessed property was not sold in a commercially reasonable manner. There is evidence to the effect that John Deere parts repossessed by the Bank had a retail value of $16,000.00 and could have been sold to dealers in the area for $11,601.93, plus the $600.00 freight paid in having them shipped to the area in which the case was tried; these 11 boxes were sold by the Bank for $5.00 each, bringing a total of $85.00; that other parts having a value of $3,043.77 were sold for $25.00; that Weatherford Equipment Company had an inventory of approximately $40,000.00 and was allowed a credit for only a small fraction of this value; that tractors and heavy equipment repossessed had a value of $8,000.00 and defendants were not given credit for any of this value; defendants were credited with practically no sum for

accounts receivable that had a value of $4,236.21; and other like items having a total value of $50,109.79.

■ The Bank had the duty, when it repossessed the property on which it had a lien and sold same at private sale, to sell the property in a commercially reasonable manner. In this respect it had a fiduciary relationship with the defendants to perform this duty.

In *Southwestern Investment Company v. Neeley*, 443 S.W.2d 573 (Fort Worth, Tex. Civ.App., 1969; Tex., 452 S.W.2d 705, remanded to the Court of Civil Appeals to determine whether or not the exemplary damages awarded were excessive; 455 S.W.2d 785, Fort Worth, Tex.Civ.App., 1970, writ dism.) this Court held that a company who repossesses property and sells same at a private sale, ". . . would stand in fiduciary relationship with the plaintiffs (referring to the mortgagors), burdened by the duties and responsibilities attendant to the trust status." It was required "To exercise good faith and fairness with respect to the conduct and accomplishment of the sale of the property interest of its cestui que trust . . . ." The court further held that the holder of the mortgage owed the fiduciary duty to make a sincere effort to obtain a full market value upon the sale of the mortgaged property. This Court held, "That such is the legal requirement in such a case is obvious when it is noticed that if, after a private sale under a power given in the mortgage, a mortgagor can prove that the property was sold unfairly, or at an under price, he will have shown himself entitled to have the value of property sold taken at its full 'market value'."

■ We hold that it was not established as a matter of law that the property was sold at its fair market value in a reasonably commercial manner and its fair market value applied as credits on the notes. Therefore, a fact issue existed for the jury's consideration and it was error to take the case from the jury and render verdict for

the Bank under the state of the record in this case.

This point is sustained.

■ By their seventh point of error defendants assert that the trial court erred in directing a verdict for the additional reasons that they were not given credit for some funds belonging to them that were misapplied by the Bank.

The record shows without dispute that the Weatherford Equipment Company sold a feed machine to R. J. Smelley Company, Inc. and installed it. This customer owed the Weatherford Equipment Company $6,731.88. R. J. Smelley issued a check in that amount payable to the Weatherford Equipment Company. Jerry Hamilton, who was the last partner in the Equipment Company, owed the Bank $7,500.00 represented by his personal note. This $7,500.00 debt was in no way connected with the operation of the business of the defendants. Jerry Hamilton was planning to permanently move to another state. He took the Equipment Company check to plaintiff Bank and used it as a payment on this personal note. The Bank had full knowledge of the fact that this Equipment Company check was used to pay the personal debt of Jerry Hamilton. The defendants assert that since the Bank received the Equipment Company's funds in cash in a liquidated sum that this sum should be applied as a payment, credit or offset on the claimed indebtedness that the defendants owed the Bank. A Bank official testified that the Bank was aware of the fact that Hamilton might leave town and that is why the Bank asked to talk to him about his note. The Bank knew the Weatherford Equipment Company check was used to make a substantial payment on this personal note. The defendants were not given credit for this payment.

In *National Indemnity Co. v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528 (1961), that court held that the Bank may not apply funds of another to the individual debt of the depositor if there has

been no change in the bank's position to its detriment and no superior equities have been raised in its favor. This rule applies even when the Bank has no knowledge or notice that the funds deposited to the individual debt actually belonged to another or to another legal entity.

In *Vernor v. D. Sullivan & Co.*, 126 S.W. 641 (Tex.Civ.App., 1910, no writ hist.) that court held that the defense of payment was not barred by limitation when the money had been misapplied. In that case, the court held that the trial court could not have rendered the judgment it did render, absent production of the note and *testimony* showing payments and credits supporting the judgment.

We hold that the court erred in directing a verdict and thus ruling as a matter of law that even though the above transaction was plead by the defendants and proved without dispute, nevertheless, the defendants claim of payment and therefore entitlement to credit on the note or notes was not available to defendants because of the effect of the statute of limitations.

This point is sustained.

By their fifth, sixth and seventh points of error defendants assert that the trial court erred in instructing a verdict for the Bank on the theory that the two year statute of limitations had barred the defenses as well as the cross-action of Leon Christian because in the three instances described below the defendants or Leon Christian had the right of indemnity against the Bank. Defendants further assert that limitations did not begin to run until they sustained damage and that they plead the right of indemnity within the period of limitations.

1. The John Deere Transaction

The defendants in their answer and Leon Christian in his cross-action alleged, which allegations were supported by evidence in the record, that Weatherford Equipment Company and Leon Christian had in its or his possession property owned by John Deere Company. Title to this property remained in John Deere Company under a consignment agreement. Defendants had agreed with John Deere Company to return its property to it and in pursuance to such agreement had returned to it all such property except 17 boxes of spare parts which the Bank took into its possession and sold.

Defendants assert that under these facts they had no cause of action against the Bank for conversion of this property because they did not own the property and suffered no damage. Thereafter, John Deere Company sued the defendants for the value of these spare parts the defendants had agreed to return to John Deere Company. This suit resulted in a judgment against the defendants, Weatherford Equipment Company, Leon Christian and Jerry Hamilton in the sum of $2,343.77, plus $700.00 attorney's fees. The judgment is dated November 10, 1971. The record reflects that Leon Christian paid this judgment on October 16, 1972. The defendants' answer and the cross-action of Leon Christian were filed on March 5, 1974, alleging these facts and seeking relief against the Bank. This pleading was filed within two years from the date the judgment was paid. Leon Christian asserts that the statute of limitations did not begin to run until he sustained damage when he paid the judgment.

2. The Merchants and Farmers Bank Transaction

Defendants and Leon Christian alleged and offered evidence to the effect that certain equipment was mortgaged to another Bank, the Merchants and Farmers Bank, and this equipment was repossessed by the plaintiff bank and that Leon Christian paid the amount of the lien to the Merchants and Farmers Bank. Under this state of facts the claim is made that the rules concerning indemnity apply.

3. The DeLaval Separator Company-Smelley Check Transaction

The defendant Leon Christian plead and proved that DeLaval Separator Company had a lien on some dairy equipment delivered to the defendants. This equipment

was sold to and installed on the Smelley property, which transaction is discussed above. Smelley's check to the Weatherford Equipment Company, in payment for this equipment, was wrongfully applied by the plaintiff Bank to the debt of a person not connected with the transaction.

DeLaval Separator Company retained title in the equipment until it received payment for the equipment. When the debt was not paid, it obtained judgment against Leon Christian who satisfied the judgment within two years of the filing of his cross-action.

We overrule these points.

It is our opinion that the rules of law applicable to trover and conversion, rather than indemnity, apply to the fact situation before us.

■ A conversion can take place even when the person in possession does not have title to the property so long as he has the right of immediate possession. In 18 Am. Jur.2d 190 (1965), "Conversion", Sec. 53, "IV. Conditions Precedent to Recovery-Generally; title", it is stated: "Indeed, a mere right of possession is generally regarded as an interest sufficient to maintain the action." It is further stated in Sec. 54, "Right to possession": "An action for conversion may be maintained by persons having the immediate right to possession of the article converted. Indeed, ordinarily, an immediate right to possession at the time of conversion is all that is required in the way of title or possession to enable the plaintiff to maintain his action." See also *McKee v. Gratz*, 260 U.S. 127, 43 S.Ct. 16, 67 L.Ed. 167.

Texas follows the general rule which is stated in 14 Tex.Jur.2d 9 (1960), "Conversion", Sec. 3, "II. Elements of Conversion— In general": "Conversion may be committed against one who has legal possession regardless of the question of title." See *First Nat. Bank v. Brown*, 85 Tex. 80, 23 S.W. 862 (1892); *Cage Brothers v. Cage*, 382 S.W.2d 169 (San Antonio, Tex.Civ.App., 1964, ref., n. r. e.).

The defendants suffered damage at the time of the alleged conversion even though they may not have had legal title to the property at that time. In 18 Am.Jur.2d 214 (1965), "Conversion", Sec. 90, "Where third person owns interest", it is stated: "A person who is entitled to bring an action for conversion although he has a limited interest in the property converted may, as against a stranger, ordinarily recover the full value of the property because in addition to his own loss he is liable over to the owner of the remaining interest, and in order to be adequately compensated must receive sufficient damages not only to compensate himself for his own loss, but also to satisfy the demands of such owner." See also *National Bank of R. of Chicago v. Wells-Jackson Corp.*, 358 Ill. 356, 193 N.E. 215 (1934).

■ It is our opinion that the rules stated above concerning indemnity do not apply to these three transactions. To that extent the points are overruled. We hold that limitation is not a bar to these matters when plead and proved as a defense to the Bank's cause of action.

The two year statute of limitations governs an action for conversion. Art. 5526, V.A.T.S.

■ It is our further opinion that the two year statute of limitations does apply and bar the cross-action of Leon Christian only to the extent that he seeks a recovery of any sum in excess of the alleged debt owed the Bank.

■ Leon Christian, by his 8th and 9th points of error, asserts that the trial court erred in instructing a verdict against him on his cross-action because he had alleged and proved fraud and concealment on the part of the Bank which tolled the running of the statute of limitations until the cross-action was filed and that a fact issue existed which precluded the court from instructing a verdict. Leon Christian alleges the Bank unlawfully and intentionally concealed from him the amount of credit allowed defendants from the sale of the

seized assets, the amount collected on the seized accounts receivable, the Bank waited 4½ years before setting the case for trial, the misapplication of the Smelley check, and the Bank concealed from him what disposition was made of the heavy equipment.

We overrule these points.

The record reflects that Smelley's check to Weatherford Equipment Company was dated June 29, 1970, and deposited in the Bank the next day. Leon Christian testified he had learned of this about six weeks later. His cross-action was filed March 5, 1974, alleging this transaction. This defendant learned these facts more than two years before he filed his cross-action.

This Court is of the opinion that if Leon Christian had utilized the discovery procedure authorized by the Texas Rules of Civil Procedure he could have discovered the facts alleged by him as constituting fraud within two years after the happening thereof. The rule governing such acts is stated in *Ellison v. McGlaun*, 482 S.W.2d 304 (Amarillo, Tex.Civ.App., 1972, ref., n. r. e.): "Art. 5526 is applicable to an action for damages based on fraud, and the cause of action accrues at the time the fraud is perpetrated, unless it is concealed or is unknown to the defrauded party; but in any case limitation under the statute commences at the time the fraud is discovered, or could have been discovered by the exercise of reasonable diligence, by the defrauded party." See also 26 Tex.Jur.2d 26 (1961), "Fraud & Deceit", Sec. 84, "Defenses Against Assertion of Fraud, In general; Limitations." See also *Hinds v. Biggs*, 142 S.W.2d 902 (Amarillo, Tex.Civ.App., 1940, no writ hist.).

In summary we dispose of all the points of error as follows:

We hold that the defenses alleged and proved by the defendants were not barred by the statute of limitations.

We hold that any credits, offsets and payments to which the defendants may be entitled, that exceed the amount of the debt to the Bank, are barred by the statute of limitations.

We hold that if Leon Christian is entitled to recover on his cross-action, he is entitled to setoff against any debt he owes the plaintiff up to, but not exceeding, the amount he is indebted to plaintiff. All sums that Leon Christian is entitled to recover on his cross-action, in excess of the amount that he owes to plaintiff, are barred by limitations and, therefore, he cannot recover any such excess sums.

That part of the judgment dismissing the Bank's cause of action against Calvin Reynolds is severed and affirmed. The judgment against Leon Christian, Earl Ellis and C. W. Webb, is reversed and this portion of the cause of action is remanded to the trial court for another trial.

## OPINION ON MOTION FOR REHEARING

For the first time on motion for rehearing the Bank raises the point and contends that the defendants are prohibited, by the terms of the Uniform Commercial Code, from raising the issue, by way of defense or partial defense, that the collateral was not sold in a commercially reasonable manner. The Bank contends that this issue can be raised only by an independent suit for damages. The Bank has cited no authorities in support of its contentions. We overrule for the reasons hereinafter set out.

The references herein made are to the Texas Business and Commerce Code annotated (Uniform Commercial Code). Part 5 of Article 9 (9.501–7) of the Uniform Commercial Code outlines the proper procedures for a secured party to follow after a debtor's default. Section 9.504 allows the secured party to dispose of the repossessed collateral so long as the disposition is commercially reasonable. Comment 6 to Section 9.504 repeats that the Code's general obligation of good faith (Section 1.203) is

imposed upon these parties. Section 9.507(a) states that if the collateral has been disposed of without compliance with the Uniform Commercial Code, the debtor may recover for any losses sustained as a result of this wrongful disposition. Section 9.507(a) does not state that it is an exclusive remedy. Section 1.103 states that the Uniform Commercial Code remedies are cumulative.

In the case of *First National Bank of Bellevue v. Rose*, 188 Neb. 362, 196 N.W.2d 507 (1972) the Bank sued for a deficiency judgment after having sold the collateral. The debtor had proper notice of the sale. The trial court directed a verdict for the Bank holding that the alleged inadequacy of price was an affirmative defense which could not be raised by general denial. The Nebraska Supreme Court reversed and held that since the defendant-debtor had filed a general denial and introduced evidence contradicting the secured party's claim that the sale price equaled the fair and reasonable value of the collateral, a question of fact was presented for the jury. The effect of this holding was that the Bank was required to prove that all offsets and credits had been allowed, which necessarily implied an obligation to prove that the sale of collateral was made in a commercially reasonable manner. When defendants contradicted this evidence a jury question was presented.

As previously indicated above, remedies previously available to a debtor are not eliminated unless the Code specifically deletes them. Prior to the adoption of the Code a debtor could use a secured party's failure to comply with the terms of the chattel mortgage and the applicable resale and repossession law as a defense or a partial defense to an action to obtain a deficiency judgment.

The remedies available to the debtor are not limited by the Code to the institution of an independent cause of action for damages under the facts in this case.

In *Kolbo v. Blair*, 379 S.W.2d 125 (Corpus Christi, Tex.Civ.App., 1964, ref., n. r. e.) that court had before it a suit by a creditor against his debtor to obtain a deficiency judgment after having sold the collateral. That court stated: "The appellees sought a deficiency judgment. Deficiency is that part of the secured obligation which remains after crediting it with the net proceeds accruing from a valid sale of the security by the creditor." The court further stated the rule to be: "A prior valid sale, fairly conducted, or a determination that the property had been converted, and then a finding of the reasonable market value of such property as of the date of its conversion are the conditions precedent to the entry of a proper deficiency judgment. . . . If the value of the said property, considered as it was on said date (the date of the appropriation by the appellees), is found to be less than the debt, then the appellants should be given credit for such value, and appellees a judgment for the remaining deficiency, plus interest and attorney fees." For a general discussion on this subject and an analysis of the decided cases see Vol. 6, No. 4, Uniform Commercial Code Law Journal, p. 344, "May a 'Wrongdoer' Recover a Deficiency Judgment, or Is Section 9–507(1) a Debtor's Exclusive Remedy?"

Appellee's motion for rehearing is overruled.

Appellants' conditional motion for rehearing is also overruled.