Raymond **SANCHEZ**, Appellant,

v.

William **WADE**, Appellee.

No. 6390.

Court of Civil Appeals of Texas, El Paso.

Sept. 11, 1974.

Abraham & Aguilar, Joseph (Sib) Abraham, Jr., Anthony C. Aguilar, El Paso, for appellant.

Grambling, Mounce, Deffebach, Sims, Hardie & Galatzan, John A. Grambling, El Paso, for appellee.

## OPINION

OSBORN, Justice.

This is a medical malpractice case. The Appellant contends by a single point of error that the trial Court erred in entering a summary judgment for the doctor. Appellee by two counterpoints contends that the trial Court properly granted his motion for summary judgment because as a matter of law there was no error in his diagnosis and because Appellant's cause of action was barred by the two-year statute of limitations. We affirm on the limitations issue.

The record in this case includes the deposition of each party, hospital records and affidavits and exhibits attached to the motion for summary judgment. In 1966, the Appellant received an injury to his left leg in an automobile accident and that leg was amputated at the hip in 1968. Appellant was first seen by Appellee, a vascular surgeon, at the request of the Texas Rehabilitation Service on June 18, 1970, due to pain in his right leg. He was hospitalized for further tests and on June 23, 1970, a translumbar aortogram was performed and the following day a femoral arteriogram was performed. Based upon Appellee's examination and the tests performed, Appellee found no evidence of arterial disease. Similar findings were made by the radiologist at the hospital where the tests were performed. Appellee did not see or treat Appellant again after these tests were completed.

Appellant was hospitalized on April 13, 1971, and the following day he was advised by Dr. Roger R. Delgado that he had arterial insufficiency and that there was a strong likelihood that he would lose his right leg. On June 30, 1971, his right leg was amputated. On May 29, 1973, nearly three years after Appellee last saw this patient and more than two years after Dr. Delgado advised the patient of his then existing condition, but less than two years after the amputation, this suit was filed alleging that Dr. Wade negligently and incorrectly diagnosed the patient's condition and that the doctor should have discovered that the patient was suffering from arteriosclerosis which required immediate treatment. After Appellee filed his motion for summary judgment, Appellant filed a supplemental petition alleging Appellee fraudulently concealed from him that his past medical records were not used in the diagnosis and that the proper degree of care in diagnosing his physical ailment was not applied.

In support of the motion for summary judgment there was attached to it the affidavit of Appellee in which he states the aortogram and arteriogram were performed on Mr. Sanchez in June, 1970, and then he states:

"* * * these X-ray studies were technically found to be satisfactory and showed no evidence of arterial disease. These studies conclusively showed in my opinion that there was no significant disease present at the time he was evaluated by me. It is a reasonable probability that arterial obstructions could have developed in the right leg at some date following these X-ray studies. These X-ray studies were also read by Dr. J. M. Parsons, of Providence Memorial Hospital, Radiology Department, and an exact copy of his findings is attached to this Affidavit, which show that the right femoral vessels were within normal limits."

The attached copies of the radiologist's reports reflect findings of no significant abnormalities and that the right femoral vessels were within normal limits.

Of course the affidavit of Dr. Wade and the X-ray findings of the radiologist only state opinions and conclusions of experts in their particular fields of medicine. Although there is no contradic-

tory evidence, and nothing to suggest an improper or negligent diagnosis, on a summary judgment hearing an issue cannot be established as a matter of law by opinion evidence and conclusions of experts. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970).

■ In Bond v. Snow, 422 S.W.2d 842 (Tex.Civ.App.—Eastland 1967, affirmed, Snow v. Bond, 438 S.W.2d 549 (Tex.Sup. 1969)), the Court said:

> "Appellees sought to show that appellant had no cause of action against them by their opinion testimony and the opinion of another medical doctor that appellees were not negligent in their treatment and care of appellant, but, on the contrary, provided that character of care which a reasonably prudent doctor would have provided under the same or similar circumstances. This proof did not meet the burden required of a defendant moving for summary judgment. It is well settled that the opinion of experts, even when unanimous and without contradiction, is not conclusive but only raises a question of fact for determination by the finder of facts."

In the Supreme Court opinion, Justice Walker pointed out that what constitutes negligence or malpractice is a mixed question of law and fact that can only be determined by the trier of the facts. Thus, Appellee's first counterpoint is of no avail and the summary judgment cannot be affirmed on the basis that the proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the Appellant's cause of action.

A more difficult question is presented with regard to the statute of limitations defense. Under Article 5526, Vernon's Tex.Rev.Civ.Stat.Ann., suit must be filed within two years after the cause of action shall have accrued. Normally where treatment is given or surgery performed, a cause of action accrues immediately if proper care is not exercised by the attending physician. Coffman v. Hedrick, 437 S.W.2d 60 (Tex.Civ.App.—Houston (1st Dist.) 1968, writ ref'd n. r. e.); Axcell v. Phillips, 473 S.W.2d 554 (Tex.Civ.App.—Houston (1st Dist.) 1971, writ ref'd n. r. e.); Stone v. Morris, 476 S.W.2d 901 (Tex.Civ.App.—Fort Worth 1972, no writ); Jirovec v. Maxwell, 483 S.W.2d 852 (Tex.Civ.App.—Corpus Christi 1972, no writ).

■ But where the examining doctor *only makes a diagnosis and does not undertake to treat the patient, or perform surgery, when does the cause of action accrue?* The Supreme Court of this State has held that where a foreign object is left in the patient, or in the case of an unsuccessful vasectomy operation, limitations begin to run from the date the patient knew, or in the exercise of ordinary care should have known, of the malpractice. Gaddis v. Smith, 417 S.W.2d 577 (Tex.Sup.1967), and Hays v. Hall, 488 S.W.2d 412 (Tex. Sup.1972). Likewise, in fraudulent concealment cases, a similar result is reached and a party will be estopped from relying on the defense of limitations until the right of action is, or in the exercise of reasonable diligence should be, discovered. Nichols v. Smith, 507 S.W.2d 518 (Tex.Sup.1974). We hold that in a case involving an improper diagnosis, limitations should begin to run when the patient knew, or in the exercise of ordinary care should have known, of the condition or disease which the doctor failed to properly diagnose. At that time, the consequential injury or damage will have manifest itself, thus giving rise to the cause of action. Cook v. Yager, 13 Ohio App.2d 1, 233 N.E.2d 326 (1968).

■ Therefore, we conclude that Appellant's cause of action did not accrue at the time of his tests and the doctor's diagnosis in June, 1970. But, certainly if not before, at least by the end of April, 1971, at a time when Appellant was hospitalized and had been told by Dr. Delgado that he had arterial insufficiency and would likely lose

his leg, the consequential injury and damage resulting from any improper test and negligent diagnosis nearly a year earlier, had clearly manifest itself and at that time gave rise to a cause of action for malpractice if the earlier test had in fact been negligently conducted and an improper diagnosis made.

■■ The next question is whether the proof is sufficient to meet summary judgment standards to establish the defense of limitations as a matter of law. In this connection, the rule is that once the patient knows of his condition, the cause of action accrues regardless of his possible ignorance concerning the extent and permanency of his injuries or disease. Louisell and Williams, Medical Malpractice, Vol. 1, Sec. 13.07, p. 374.

The affidavit of Dr. Delgado states quite clearly that after an examination of Appellant at the hospital on April 14, 1971, both he and the attending physician, Dr. Iwen, told Mr. Sanchez that he had arterial insufficiency, that he would likely lose his leg and that there was little that could be done for his leg. The hospital records reflect an admitting diagnosis of arterial insufficiency. A femoral arteriogram on April 20, 1971, indicated an obstruction of the popliteal artery just below the knee. On April 23, 1971, the patient had an exploratory operation of the popliteal artery and an embolectomy. This evidence seems clear, direct and positive that in April, 1971, Appellant knew that he was suffering from a severe case of arterial insufficiency in his right leg. He confirmed this knowledge upon his part when he testified in his deposition as follows:

"Q When you were in Thomason General Hospital, the doctors had diagnosed your condition in April, April 14, 1971, as arterial insufficiency and had told you that you were probably going to lose your leg right then, hadn't they?

"A I guess so."

Thus there are no circumstances in evidence tending to discredit or impeach the statement contained in Dr. Delgado's affidavit and the tests laid down in Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41 (Tex.Sup.1965), have been met. Having waited until May 29, 1973, to file suit, Appellant's cause of action was barred by the two-year statute of limitations.

■ In an effort to avoid the effects of this statute, the Appellant following the October 31, 1973, opinion in Nichols v. Smith, 17 Tex.Sup.Ct.J. 57, filed a supplemental petition in which he alleged fraudulent concealment. This pleading was filed on December 6, 1973. No proof was offered in support of such pleading because under the first opinion in the Nichols case, the pleading alone was sufficient to raise a fact issue where the defendant did not conclusively rule out such issue. Subsequently, and after the entry of judgment in this case, the Supreme Court withdrew its earlier opinion and held that one relying upon fraudulent concealment to avoid the defense of the statute of limitations, has the burden to come forward with proof raising an issue of fact with respect to fraudulent concealment. Nichols v. Smith, supra. Thus, Appellant's pleading alone is insufficient to raise a fact issue as to fraudulent concealment.

The Appellant's point of error is overruled and the judgment of the trial Court is affirmed.