Mrs. Dorothy GRADY, Appellant,

v.

Max H. FAYKUS, M. D., et al., Appellees.

No. 990.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 6, 1975.

Rehearing Denied Dec. 9, 1975.

David H. Burrow, Helm, Jones & Pletcher, Houston, for appellant.

O. F. Jones, Victoria, for appellees.

OPINION

YOUNG, Justice.

This summary judgment case arose from a medical malpractice suit. Mrs. Dorothy Grady sued Dr. Max H. Faykus and Dr. Walter Herbst for injuries she allegedly sustained from excessive radiation by x-ray therapy treatments negligently administered by defendants in October and November of 1969. Plaintiff's original petition was filed June 22, 1973, which date was more than two years after the alleged negligent treatment occurred. Defendants moved for summary judgment which was granted by the trial court on the ground that the suit was barred by the two-year statute of limitations. Tex.Rev.Civ.Stat. Ann. art. 5526. From that judgment the plaintiff-appellant appeals.

In 1969 a medical diagnosis revealed that Mrs. Grady had cancer of the breast. Subsequently, in September 1969, Dr. McCollum of Victoria, Texas, performed a radical mastectomy to remove the cancer. After the operation, Dr. McCollum informed Mrs. Grady that it was routine treatment for a patient to receive x-ray therapy after such an operation. This therapy was administered to the plaintiff by defendants, Drs. Faykus and Herbst, in Victoria, Texas over a four week period from October 8, 1969, to November 4, 1969.

Toward the end of the radiation treatment (October 30, 1969) the defendant doctors noticed that Mrs. Grady had an area of redness on the area of her body which was being exposed to the radiation. A specimen of the fluid in this area was obtained by the defendants and sent to Dr. McCollum for tests. Dr. McCollum reported that the fluid aspirated from this area had grown bacteria which was sensitive to practically all antibiotics. The defendant doctors then referred Mrs. Grady to Dr. McCollum for antibiotic treatment.

Several weeks after the completion of the radiation treatments, additional complications began to appear in the area which had been exposed to the radiation. These complications manifested themselves in the form of marked discoloration of the skin (browning), blistering of the skin, and superficial ulcerations on the shoulder and the superclavicular area.

Dr. McCollum had already begun the antibiotic treatment, along with whirlpool bath treatments, both of which did not produce any satisfactory results. Dr. McCollum then attempted a skin graft. After the skin graft did not take, Mrs. Grady was referred to Dr. Bromley Freeman, a plastic surgeon in Houston, in September 1970, for further treatment.

Dr. Freeman first saw the plaintiff on September 23, 1970. Upon the initial examination, Dr. Freeman found a deep ulcer covering all of the front and top part of the shoulder. At this time, Dr. Freeman told Mrs. Grady that her condition was caused by radiation, as opposed to some other cause. This is the first time, Mrs. Grady alleges, that she knew or was aware that the radiation therapy was or might be the cause of her condition.

Plaintiff's suit was thereafter filed June 22, 1972, against Drs. Faykus and Herbst, for injuries allegedly sustained as a result of excessive radiation received through x-ray therapy treatments negligently performed and administered by defendants. The defendants answered and pleaded that plaintiff's case was barred by the two-year statute of limitations (Article 5526, supra) because the act complained of (negligent x-ray treatment in October and November, 1969) occurred prior to two years before the filing of this suit (June 22, 1972).

By her amended petition, plaintiff then pleaded that she was not aware of the cause of her condition until she saw Dr. Bromley Freeman in September 1970, and that furthermore, "Defendants intended to keep plaintiff in ignorance of her cause of action and fraudulently concealed from her the

fact that her injuries were caused by excessive radiation received through x-ray therapy treatments negligently performed and administered by defendants."

The defendant doctors then filed their motion for summary judgment on the ground that plaintiff's action was barred by the two-year limitation statute as a matter of law. Article 5526, supra. The summary judgment evidence in the present case consists of the deposition, affidavit and answers to interrogatories of plaintiff and the depositions of Drs. Richard H. Eppright, Walter E. Herbst, Max H. Faykus and Bromley S. Freeman. The trial court, after reviewing that evidence, granted summary judgment in defendants' favor decreeing that plaintiff take nothing by her suit. This appeal is by plaintiff from that decree.

Plaintiff brings forward one point of error asserting three grounds why the trial court erred in applying the statute of limitations in appellant's cause of action for the negligent performance of radiation therapy subsequent to a radical mastectomy. The grounds are these:

"A. Appellees' fraudulent concealment of the true facts of appellant's injuries tolled the running of the statute of limitations.

B. Appellant's discovery of excessive radioactive foreign objects negligently induced by appellees entitled her to the application of the foreign object discovery rule exception to the two-year statute of limitations.

C. Appellant's radiation injuries are of the type of legal injury where impossibility of discovery has created the discovery rule exception to the two-year statute of limitations."

We will first consider appellant's third ground because it is dispositive of this appeal. In this assertion, Mrs. Grady contends that her radiation injuries are of the type of legal injury where impossibility of discovery has created the discovery rule exception to the two-year statute of limitations.

The Texas Supreme Court in *Hays v. Hall,* 488 S.W.2d 412 (Tex.Sup.1973), which involved an alleged unsuccessful vasectomy operation, seemed to broaden the discovery rule. There the defendant doctor had performed a vasectomy operation on Mr. Hays and, after subsequent tests, assured him that the operation was a success and that he was in fact sterile. Subsequently, on two successive occasions, Mrs. Hays became pregnant while the defendant doctor was continuing to assure Mr. Hays that the operation had been a success and that he was sterile. The question before the court was whether limitation period began to run against plaintiff's action against the doctor at the time of the unsuccessful operation or at a time when he learned, or should have learned, that such operation was not a success. The court in holding that the statute of limitations commences to run on the date of discovery of the true facts concerning the failure of the operation, or from the date it should, in the exercise of ordinary care and diligence, have been discovered, stated:

" . . . If the limitation period is measured from the date of the operation, and if the discovery of fertility, and therefore the injury, is not made until after the period of limitation has run, the result is that legal remedy is unavailable to the injured party before he can know that he is injured. A result so absurd and so unjust ought not to be possible."

The Court in further discussing their holding and limiting language in *Gaddis v. Smith*[1] stated:

1. The holding in *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.Sup.1967) that because the patient had no way of knowing that a foreign object had been left in the incision, the cause of action for such negligence accrues when the patient learns of, or in the exercise of reasonable care and diligence should have learned of the injury, was expressly limited to causes of action in which a physician leaves a foreign object in the body of his patient.

" . . . This is not an extension of the limitation period but is merely a recognition *that in certain situations it is difficult if not altogether impossible to discover the existence of a legal injury.* This recognition gave rise to the holding in *Gaddis* and to the application in other jurisdictions of what has been called the 'discovery rule': the Statute of Limitations commences to run from discovery of the injury, or the time discovery should reasonably have been made." (Emphasis supplied.)

We believe a similar situation exists here because it was difficult if not impossible for plaintiff, who was not an expert in the field of x-ray treatment and who relied fully on the doctors' statements to her concerning her condition, to discover the existence of a legal injury, i. e., excessive radiation. Applying the rule as set out by the Supreme Court in *Hays v. Hall,* supra, the statute of limitations would commence to run on the date of the discovery of the true facts concerning the alleged negligent radiation treatment, or from the date it should, in the exercise of ordinary care and diligence, have been discovered. See also *Sanchez v. Wade,* 514 S.W.2d 812 (Tex.Civ.App.—El Paso 1974, no writ).

It is also important to note that the Supreme Court in *Nichols v. Smith,* 507 S.W.2d 518 (Tex.Sup.1974), recently has discussed the discovery rule applied in *Gaddis v. Smith,* supra, and *Hays v. Hall,* supra. In that case, Mrs. Nichols based her claim on the alleged severance of both branches of the vagus nerve, but she confined her point of error and argument on appeal to the contention that the allegations of fraudulent concealment precluded a summary judgment in respondent's favor. Despite their ruling against her contention, the Supreme Court expressly stated:

" . . . Our action in affirming the judgment of the trial court is not to be understood, therefore, as holding that the discovery rule has no application here."

The defendants assert that, even so, the plaintiff was aware of the cause of her condition as early as May 1970, which in itself was a period of time more than two years before the suit was filed. The defendants base these assertions on the statements contained in plaintiff's affidavit that "after the radiation therapy was completed, complications began to develop." At that time, it was more than two years before the suit was filed. This, the defendants contend, shows that plaintiff knew and was aware in May 1970 that her condition was the result of the radiation therapy improperly performed by defendants.

Plaintiff, on the contrary, asserts in her deposition and affidavit that it was not until September 1970, when she was examined by Dr. Freeman, that she was informed and discovered that her condition was in fact caused by the radiation therapy. September 1970 was within the required two-year period prior to plaintiff's filing suit against defendants in June 1972. In that regard, Dr. Freeman in his deposition stated:

"A  Mrs. Grady had no idea as to what was occurring? Yes, that is true. She felt that she had either an infection or a cancer in her shoulder.

Q  And you imparted what knowledge you did to her—

A  I explained to her she had no surgery in that area, that the only thing she had on that was the radiation."

Consequently, a fact issue exists about when plaintiff discovered the true facts concerning the cause of her unfortunate condition or the date she, in the exercise of ordinary care, should have discovered such cause. Because of that fact issue, the trial court erred in granting a summary judgment in defendants' favor.

Because we are reversing this case and remanding it for trial on the merits based on our reasons set out in our discussion of appellant's third ground (discovery rule), we do not deem it necessary to further

discuss appellant's first and second points (fraudulent concealment doctrine and foreign object discovery rule). We have, however, considered the appellant's first and second grounds, and find that she has failed in her burden to bring forward proof raising an issue of fact regarding these contentions.

The judgment of the trial court is reversed and the cause is remanded for trial.