C. W. WEAVER et al., Appellants,

v.

Cecil A. ROBINSON, M. D., Appellee.

No. 6494.

Court of Civil Appeals of Texas, El Paso.

April 7, 1976.

Rehearing Denied May 5, 1976.

James D. Cunningham, Odessa, Little & Little, Jack Little, Big Spring, for appellants.

Finley & Scogin, Kermit, Shafer, Gilliland, Davis, Bunton & McCollum, Inc., W. O. Shafer, James M. O'Leary, Odessa, for appellee.

## OPINION

OSBORN, Justice.

This is a medical malpractice case. The trial Court entered summary judgment for the doctor on a plea of the two-year statute of limitations. Sustaining a contention that the "discovery rule" delayed the running of limitations, we reverse and remand.

The Appellant sustained an on-the-job injury on July 26, 1971. The Appellee performed a myelogram on Appellant on August 6, 1971, and a laminectomy on August 10, 1971, at the L 4–5 and L 5–S 1 level. Dr. Robinson continued to see and treat Mr. Weaver until December 29, 1971. On January 25, 1972, the Industrial Accident Board approved a compromise settlement agreement between Mr. Weaver and the workmen's compensation carrier, Hartford Insurance Group. Shortly thereafter, the Appellant saw another orthopedist who initially prescribed a back brace, and then following a myelogram on April 25, 1972, performed a laminectomy on April 26, 1972, and removed a herniated nucleus pulposus from the L 3–4 level. Another operation was performed in December, 1973, with a total laminectomy and a fusion. The patient continued to have back pain and additional surgery was performed for a myelostat implantation to relieve the back pain. Appellant filed suit against Dr. Robinson on April 4, 1974, and his basic complaint is one of an improper diagnosis, particularly with regard to the ruptured disc at the L 3–4 level which he contends was never discovered until the myelogram in April, 1972.

The Appellee pled the two-year statute of limitations and attached to the motion for summary judgment a copy of the compromise settlement agreement and Board's order dated January 25, 1972, approving the settlement agreement. It was contended that limitations began to run when the Board approved the compromise settlement agreement, and that this suit, more than twenty-six months later, was barred by Article 5526, Tex.Rev.Civ.Stat.Ann. The trial Court agreed and entered summary judgment.

The Appellants present five points of error. We have concluded that a fact issue does exist under the discovery rule and sustain the last point.

This is not a true third-party case, since the doctor did not cause the on-the-job injury, and is not liable for damages resulting from such injury, but only for damages arising from any aggravation resulting from his malpractice. *Seward v. Robinson*, 535 S.W.2d 778 (Tex.Civ.App.—El Paso 1976, writ ref'd n. r. e.). But, in any event, Appellee contends the holding in *Campbell v. Sonford Chemical Company*, 486 S.W.2d 932 (Tex.1972), controls. In that case, the Court said:

" * * * limitation runs against * * the employee in third-party actions authorized by Section 6a from the date of the payment of the award of the Industrial Accident Board * * * ".

If the Workmen's Compensation Act was not involved, then normally, where treatment is given or surgery performed, a cause of action accrues immediately if proper care is not exercised by the attending physician. *Coffman v. Hedrick*, 437 S.W.2d 60 (Tex.Civ.App.—Houston (1st Dist.) 1968, writ ref'd n.r.e.); *Axcell v. Phillips*, 473 S.W.2d 554 (Tex.Civ.App.—Houston (1st Dist.) 1971, writ ref'd n.r.e.); *Stone v. Morris*, 476 S.W.2d 901 (Tex.Civ.App.—Fort Worth 1972, no writ); *Jirovec v. Maxwell*, 483 S.W.2d 852 (Tex.Civ.App.—Corpus Christi 1972, no writ).

But in some instances where the patient is not aware of the malpractice until a later time, the courts have applied the "discovery rule" to delay the time from which limitations will begin to run. The Texas Supreme Court has applied the rule in two instances. First, in the case where a foreign object is left in a patient, and also, in the case of an unsuccessful vasectomy operation. *Gaddis v. Smith*, 417 S.W.2d 577 (Tex.1967); *Hays v. Hall*, 488 S.W.2d 412 (Tex.1972).

Following those decisions, this Court in *Sanchez v. Wade*, 514 S.W.2d 812 (Tex.Civ. App.—El Paso 1974, no writ), held "that in a case involving an improper diagnosis, limitations should begin to run when the patient knew, or in the exercise of ordinary care, should have known, of the condition or disease which the doctor failed to properly diagnose." Such holding is in line with cases from other jurisdictions. See: Medical Malpractice—Limitations, 11 Houston Law Review 826, 842, footnote 115 (1974).

This issue was before the Supreme Court of Hawaii in *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 433 P.2d 220 (1967). In that case, the Court stated the issue and its answer thereto as follows:

"This case involves a narrow and precise question. When does the statute of limitation begin to run against a malpractice claim where the plaintiff did not know, nor acting reasonably could have been expected to know, that the defendant negligently diagnosed an ailment?

* * * * * *

"We conclude that the statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence. This conclusion is consistent with the legislative prescription to avoid constructions which would lead to absurd results.[6] The injustice of barring the plaintiff's action before she could reasonably have been aware that she had a claim is patent. * * *

[6] "R.L.H.1955, § 1–18(c) reads: 'Every construction which leads to an absurdity shall be rejected.'"

Very similar language was used by the Texas Supreme Court in *Hays v. Hall*, supra, where the Court, in discussing the effect of permitting limitations to run before a party knows that he is injured, said: "A result so absurd and so unjust ought not to be possible."

In 1969, the issue was before the Supreme Court of Idaho in *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1969), and there the Court stated the issue and its answer as follows:

"This case presents for decision a single question, to-wit: in an action for medical malpractice involving an alleged misdiagnosis, should this Court adopt the 'discovery rule' previously adopted by this Court in medical malpractice actions involving the negligent leaving of a foreign object in a patient's body during surgery? * * *

* * * * * *

"We conclude that the statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence."

The following year, the issue was before the Supreme Court of Colorado in *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970). The Court noted that the complaint alleged that the doctor negligently diagnosed a malignant tumor in plaintiff's brain and per-

formed unnecessary surgery to remove the tumor and that an amended complaint alleged that the pathologist negligently diagnosed brain tissue to be malignant when, in fact, it was normal. In reversing a summary judgment which had been entered in favor of the defendants based upon the statute of limitations, the Court said:

"Defendants have argued that the discovery rule is and should be applied only to foreign object cases. We believe the same rule should be applied regardless of the type of negligence involved.

\* \* \* \* \* \*

"Thus we hold that in a professional negligence case the cause of action 'accrues' when the patient discovers or, in the exercise of reasonable diligence, should have discovered the doctor's negligence."

Although our 1974 decision in the *Sanchez* case has no writ history, we believe the decision to be in accord with other cases which have passed upon this issue, and that such decision is controlling in this case. *Grady v. Faykus*, 530 S.W.2d 151 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.). We believe anything to the contrary in *Coffman v. Hedrick*, supra, must be considered in the light of when it was written and the Supreme Court holding in the *Gaddis* case.

The Appellant, by affidavit and deposition, asserts that he did not know he had a ruptured disc at the L 3–4 level until after the myelogram of April 25, 1972. While these sworn statements by Mr. Weaver do not prove the issue as a matter of law, they do raise a fact issue under the discovery rule.

██ Although Dr. Robinson asserts in his deposition that there was no improper diagnosis and that there was not a ruptured disc at the L 3–4 level as shown by the myelogram which he performed, his opinion and conclusion cannot establish such a fact as a matter of law for summary judgment purposes. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970); *Bond v. Snow*, 422 S.W.2d 842 (Tex.Civ.App.—East-

land 1967), aff'd, 438 S.W.2d 549 (Tex.1969). The Appellant having raised the "discovery rule" to defeat the running of the statute of limitations at the summary judgment hearing, the burden was upon Appellee to negate the applicability of such rule. *Oram v. General American Oil Company of Texas*, 513 S.W.2d 533 (Tex.1974); *Zale Corporation v. Rosenbaum*, 520 S.W.2d 889 (Tex. 1975). That was not done in this case. Appellants' Point of Error No. 5 is sustained.

The judgment of the trial Court is reversed and the case is remanded to the trial Court.