Cecil A. ROBINSON, Petitioner,

v.

C. W. WEAVER et al., Respondents.

No. B–6072.

Supreme Court of Texas.

April 6, 1977.

Rehearing Denied May 18, 1977.

Shafer, Gilliland, Davis, Bunton & McCollum, W. O. Shafer and James M. O'Leary, Odessa, Finley & Scogin, Robert Scogin, Kermit, for petitioner.

James D. Cunningham, Odessa, Little & Little, Jack N. Little, Big Spring, for respondents.

DENTON, Justice.

The trial judge has rendered a summary judgment in this medical malpractice case, holding that the plaintiff's cause of action for damages due to misdiagnosis is barred by the two-year statute of limitations. The court of civil appeals has reversed and remanded, holding that the "discovery rule" applies and that a question of fact exists concerning when the plaintiff knew or should have known of his injury. 536 S.W.2d 243. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

The plaintiff injured his back on July 26, 1971. On August 6, 1971, the defendant performed radiographic and other tests upon the plaintiff, and concluded that plaintiff had a herniated disc between his fourth and fifth lumbar vertebrae. Four days later, the defendant surgically repaired the disc diagnosed as herniated. The plaintiff remained in the defendant's care until late December of 1971, during which time he continued to have back pains. On January 26, 1972, the plaintiff saw another physician, who prescribed a back brace, and later on April 25, 1972, performed radiographic tests which resulted in a diagnosis of a herniated disc. The following day, April 26, 1972, a herniated disc between the third and fourth lumbar, vertebrae was excised. The gravamen of plaintiff's claim is, therefore, that defendant erroneously diagnosed plaintiff's condition and operated on the wrong intervertebral disc.

This action was filed by plaintiff on April 4, 1974, more than two years after plaintiff had changed physicians, but less than two years after the alleged actual discovery of an injury different from that diagnosed and treated by defendant in August of 1971. The applicable statute of limitations is Article 5526 of the revised civil statutes, providing:

There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterwards, all actions or suits in court of the following description:

\* \* \*

6. Action for injury done to the person of another.

The defendant asserts that plaintiff's action is barred by limitations. The plaintiff claims he did not actually discover, nor in the exercise of ordinary care should he have discovered, that there was a misdiagnosis until the results of the second operation were known to him, and that his cause of action did not, therefore, accrue until such time.

For the purposes of application of statutes of limitations, a cause of action generally can be said to accrue at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Williams v. Pure Oil Company*, 124 Tex. 341, 78 S.W.2d 929 (1935). In personal injury actions, this means when the wrongful act effects an injury, regardless of when the claimant learned of such injury. An exception to this rule of accrual has been applied by this and many other courts in some situations in which a claimant was unable to know of his injury at the time of actual accrual; the exception is known as the "discovery rule." The issue in this case is whether this "discovery rule" will be applied to an action founded upon a misdiagnosis.

In *Gaddis v. Smith*, 417 S.W.2d 577 (Tex. 1967), we held that a "cause of action for negligent leaving of a foreign object in a patient's body by a physician accrues when the patient learns of, or, in the exercise of reasonable care and diligence, should have learned of the presence of such foreign object in his body." 417 S.W.2d at 580. *Gaddis* is representative of what now may be considered the majority rule in the United States. Annot., *When Statute of Limi-*

*tations Commences to Run against Malpractice Action Based on Leaving Foreign Substance in Patient's Body,* 70 A.L.R.3d 7 (1976). The statute of limitations in a cause of action for negligent performance of a vasectomy operation was held in *Hays v. Hall,* 488 S.W.2d 412 (Tex.1972), to have commenced to run "on the date of discovery of the true facts concerning the failure of the operation, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." 488 S.W.2d at 414. And we found no reversible error in the court of civil appeals' holding that a cause of action for excessive treatment with X-rays did not "accrue" for limitations purposes until the plaintiff, a cancer patient, had learned that excessive radiation, and not a recurrence of cancer, was the cause of her ulcerated epidermis. *Grady v. Faykus,* 530 S.W.2d 151 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

The result in "discovery rule" cases like *Gaddis, Hays v. Hall* and *Grady v. Faykus* stems from the recognition of the purposes of statutes of limitations; and, at the same time, recognition of what is not the statutes' purpose, but an unfortunate, occasional by-product. The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds. *Price v. Estate of Anderson,* 522 S.W.2d 690 (Tex.1975); *Hallaway v. Thompson,* 148 Tex. 471, 226 S.W.2d 816 (1950). Statutes of limitations are not directed to the merits of any individual case, they are a result of the legislative assessment of the merits of cases in general. The fact that a meritorious claim might thereby be rendered nonassertible is an unfortunate, occasional by-product of the operation of limitations. All statutes of limitations provide *some* time period during which the cause of action is assertible. However, preclusion of a legal remedy alone is not enough to justify a judicial exception to the statute. The primary purpose of limitations, to prevent litigation of stale or fraudulent claims, must be kept in mind. See Note, 30 Sw. L.J. 950 (1976).

This Court has specifically limited its prior holdings regarding this discovery rule in malpractice cases. In *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967), this Court limited its holding to causes of action in which a foreign object is left in the body of a patient, noting that in this type of case there is an "inability to know of the negligent act" and that it is a "peculiar type of case which is not particularly susceptible to fraudulent prosecution." This same rationale was also expressed in the "vasectomy" case, *Hays v. Hall,* 488 S.W.2d 412 (Tex.1973). There this Court held "that in malpractice cases arising from vasectomy operations the Statute of Limitations commences to run on the date of the discovery of the true facts concerning the failure of the operation, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." 488 S.W.2d at 414. In *Gaddis v. Smith, supra* this Court quoted with approval, the following language from *Fernandi v. Strully,* 35 N.J. 434, 173 A.2d 277 (1961):

> [T]he question when a cause of action accrues is a judicial one, and to determine it in any particular case is to establish a general rule of law for a class of cases, which rule must be founded on reason and justice. . . .

> In the absence of legislative definition and specification, the . . . courts have often been called upon to delineate the statute; they have conscientiously sought to apply it with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary injustices. . . . [I]n still other instances they have declined to find the bar inequitable though the plaintiff admittedly knew nothing about the cause of action until shortly before the institution of his action; in reaching this result they were not unaware of the individual injustice to the plaintiff but presumably determined that, on balance, it was outweighed by the need for repose and the

danger that a different approach might undermine the statutory goal.

173 A.2d at 285.

Immediately following the above quoted language, the New Jersey Court in *Fernandi v. Strully* distinguished the "foreign object" case from other types of medical malpractice cases, noting that it "does not raise questions as to [plaintiff's] credibility nor does it rest on matters of professional diagnosis, judgment or discretion." In such a case, "the lapse of time does not entail the danger of a false or frivolous claim nor the danger of a speculative or uncertain claim."

The case before us however does "rest on matters of professional diagnosis, judgment or discretion." This distinction between an "alleged misdiagnosis" case and a "foreign object" case was also clearly drawn in *Owens v. White*, 380 F.2d 310 (9th Cir. 1967), in the following language:

> Extension of the discovery rule to encompass a case of the type involved here would subject physicians to the possibility of liability, or at least to the embarrassment and expense of litigation, upon claims of mistaken diagnosis of any illness, however great may have been the lapse of time between the date of cessation of the doctor-patient relationship and the formal prosecution of the claim. *The danger of "fraudulent and stale" claims, which the Idaho court recognized to be diminished in foreign object cases, is obviously enhanced when the claim of medical malpractice is predicated upon alleged misdiagnosis. In such a case, unlike the foreign object situations, not even the fact of injury can always be clear.* Even in its present stage of advanced development, medicine is not an exact science. Symptoms and diseases thought at one time, even recently, to fall into one category are later discovered, through the evolution of the science, to fall into another. If the trier of fact should be convinced, upon the basis of new knowledge, that a mistaken diagnosis was made, the defendant's task of establishing that his conduct did not fall below the standard of care which prevailed in his profession at the time and place of the alleged error could prove insurmountable in the event of sufficient lapse of time.

380 F.2d at p. 316 (emphasis supplied).

The cause of action alleged in the present case is founded upon an alleged misdiagnosis in August of 1971. Plaintiff, to prove his cause of action, faces the burden of proving both a mistake in professional judgment and that such mistake was negligent. Expert testimony would be required. Physical evidence generally is not available when the primary issue relevant to liability concerns correctness of past judgment. Unlike *Gaddis v. Smith* there exists in the present case no physical evidence which in-and-of-itself establishes the negligence of some person. What physical evidence was to the cause of action alleged in *Gaddis v. Smith*, expert testimony is to the cause of action in the present case. Even the fact of injury is a matter of expert testimony.

Likewise in *Hays v. Hall* the defendant doctor's error was established by the physical fact that plaintiff's wife became pregnant and was also subject to proof by performance of fertility tests upon the plaintiff. Sterility *vel non* involved a wholly different line of inquiry from the erroneous judgment *vel non* involved in the present case. Sterility is establishable by physical proof; negligently erroneous judgment by expert testimony.

*Grady v. Faykus* goes somewhat further than did this Court in *Hays v. Hall* and *Gaddis v. Smith,* in that the court of civil appeals applied the "discovery rule" to a cause of action founded upon negligent *treatment*. Mrs. Grady, following a radical mastectomy for breast cancer, was referred by her surgeon to the defendant physicians for administration of X-ray therapy. Such therapy was concluded by the defendants in November of 1969. Ten months later, in September of 1970, Mrs. Grady was informed by a plastic surgeon that skin ulcers in areas exposed to radiation were the result of *excessive* doses of radiation. Suit was filed against the therapist-doctors in June of 1972, more than two years after the

termination of treatments by the defendants, but less than two years following the date on which she became apprised of the cause of her pain. The "discovery rule" was applied, and this Court found no reversible error. It must be pointed out that Mrs. Grady's claim was not against her surgeon for *recommending* X-ray therapy; it was for the negligent administration of such therapy. If she in fact received excessive doses of radiation, such could be established by proof of her present bodily condition.

■ Assuming for the moment that strict application of limitations would have an unintended effect in the present case, in that plaintiff's claim would be held barred less than two years after he knew of his injury, it is nevertheless clear that the *purpose* of limitations would be furthered by such application. Proof of plaintiff's cause of action would demand expert testimony concerning the interpretation of tests made in 1971. While present physical evidence might exist which proves that plaintiff's disc was excised in 1971, the main issue of negligent exercise of judgment is subject to proof only by expert hindsight. The line between negligent diagnosis and the negligent treatment in *Grady v. Faykus* may indeed be a fine one, but the distinction is necessary in order to assure that the primary purpose of statute, of limitations is met. We decline to apply the discovery rule to encompass a case of the type involved here.

The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.

Dissenting Opinion by POPE, J., in which McGEE, JOHNSON and YARBROUGH, JJ., join.

POPE, Justice, dissenting.

I respectfully dissent. The case presents a single question: Does the "discovery rule" apply to an action based upon a medical doctor's misdiagnosis? The majority answers no. By so holding, the majority treats misdiagnosis differently than we have treated other types of medical malpractice. I disagree with the majority holding. I believe that we should be consistent with our prior holdings and apply the "discovery rule" to a doctor's misdiagnosis.

In *Gaddis v. Smith,* 417 S.W.2d 577 (Tex. 1967), this court applied the "discovery rule" to a foreign object negligently left in a patient's body. In *Hays v. Hall,* 488 S.W.2d 412 (Tex.1973), we extended the "discovery rule's" coverage to an unsuccessful vasectomy operation. The Corpus Christi Court of Civil Appeals, in *Grady v. Faykus,* 530 S.W.2d 151 (Tex.Civ.App.1975, writ ref'd n.r.e.), applied the rule to negligently administered X-ray treatments. In *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974), both vagus nerves were severed during a hernia operation. This court noted the discovery rule issue was not raised and stated:

> In so far as Mrs. Nichols bases her claim on the alleged severence [sic] of . . . the vagus nerve, it could be argued that the case is governed by the discovery rule . . . .. Our action in affirming . . is not to be understood, therefore, as holding that the discovery rule has no application here. *Id.* at 521.

In *Sanchez v. Wade,* 514 S.W.2d 812 (Tex. Civ.App.1974, no writ), the El Paso Court of Civil Appeals applied the "discovery rule" to a doctor's negligent and incorrect diagnosis. The El Paso court made the same holding in the case now before us. The "discovery rule" has also been applied in other areas of Texas law.[1]

---

1. The "discovery rule" applies in actions based on fraud, *Ellison v. McGlaun,* 482 S.W.2d 304 (Tex.Civ.App.1972, writ ref'd n.r.e.), and fraudulent concealment in medical malpractice cases, *Thompson v. Barnard,* 142 S.W.2d 238 (Tex.Civ.App.1940), aff'd, 138 Tex. 277, 158 S.W.2d 486 (1942). In an action for breach of contract, or implied warranty, the statute of limitations runs from the time plaintiff knew or should have known of the breach. *Rothman v. Gulf Coast Investment Corp.,* 497 S.W.2d 792 (Tex.Civ.App.1973), *rev'd on other grounds,* 506 S.W.2d 856 (Tex.1974). Recently, the rule was applied in a suit for defamation. *Kelley v. Rinkle,* 532 S.W.2d 947 (Tex.1976).

As Professor Prosser explains, there has been a "wave of decisions" adopting the "discovery rule" for all medical malpractice actions. PROSSER, LAW OF TORTS, § 30 (4th ed. 1971).[2] The decision of *Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 433 P.2d 220 (1967), is the most frequently cited opinion in this line of cases. In *Yoshizaki,* the court recognizes that there are two conflicting public policies at issue. There is the policy of protecting the practitioner from stale demands, and there is the conflicting policy favoring the adjudication of meritorious claims. Balancing these two policies, the Hawaii Supreme Court concluded that the burden placed upon the doctor is less than the injustice the plaintiff would suffer if the discovery rule was not applied. The Hawaii court explained that, "A basic reason underlying statutes of limitation is nonexistent; the plaintiff has not delayed voluntarily in asserting her claim." In reaching the same conclusion, the Oregon Supreme Court noted that it is impossible on a theoretical basis to apply the discovery rule to one kind of malpractice and not to other types of malpractice. *Frohs v. Greene,* 253 Or. 1, 452 P.2d 564 (1969). The Oregon court explained that in all malpractice, "it is unfair to say a person can maintain an action before he knows he has one." We explained in *Hays v. Hall* that it is unjust to hold that a "legal remedy is unavailable to the injured party before he can know that he is injured." I agree with the Oregon Supreme Court that this reasoning is as equally applicable to a misdiagnosis action as it is to a foreign object or vasectomy action.

It is important to note that Mr. Weaver remained under Dr. Robinson's treatment from August, 1971, through December, 1971. During this period, he continually complained of persistent pain and infection around the incision area. Dr. Robinson responded to these complaints by telling Mr. Weaver that he was "worrying too much." The majority opinion in effect says that a patient trusts his physician's advice at his own risk. In a similar situation, the Michigan Supreme Court explained that:

> [I]t would be "illogical and unintelligent" to require a patient to determine on the date he last consults a physician that malpractice has taken place, when he in fact relies upon the advice that constitutes the malpractice. So to hold would punish the patient who relies upon his doctor's advice and places a premium on skepticism and distrust. *Johnson v. Caldwell,* 371 Mich. 368, 123 N.W.2d 785 (1963).

The California Supreme Court has long recognized that due to a doctor and patient's fiduciary relationship, "facts which would ordinarily require investigation may not excite suspicion, and that the same degree of diligence is not required of the injured person." *Stafford v. Shultz,* 42 Cal.2d 767, 270 P.2d 1 (1954); *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 159 P.2d 958 (1945). The Oklahoma Supreme Court has stated that "justice would often be defeated" if victims of medical malpractice must diagnose their injuries where "special knowledge not possessed by an ordinary layman" is required. *Seitz v. Jones,* 370 P.2d 300, 302 (Okl.1961). The Supreme

**2.** Courts now more generally applying the discovery rule to medical malpractice cases are: *Mayer v. Good Samaritan Hospital,* 14 Ariz. App. 248, 482 P.2d 497 (1971); *Stafford v. Shultz,* 42 Cal.2d 767, 270 P.2d 1 (1954); *Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603 (1970); *City of Miami v. Brooks,* 70 So.2d 306 (Fla.1954); *Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 433 P.2d 220 (1967); *Renner v. Edwards,* 93 Idaho 836, 475 P.2d 530 (1970); *Lipsey v. Michael Reese Hospital,* 46 Ill.2d 32, 262 N.E.2d 450 (1970); *Baines v. Blenderman,* 223 N.W.2d 199 (Iowa 1974); *Tomlinson v. Siehl,* 459 S.W.2d 166 (Ky.1970); *Springer v. Aetna Casualty and Surety Company,* 169 So.2d 171 (La.

App.1964); *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966); *Johnson v. Caldwell,* 371 Mich. 368, 123 N.W.2d 785 (1963); *Acker v. Sorensen,* 183 Neb. 866, 165 N.W.2d 74 (1969); *Iverson v. Lancaster,* 158 N.W.2d 507 (N.D.1969); *Frohs v. Greene,* 253 Or. 1, 452 P.2d 564 (1969); *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968); *Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1974); *Janisch v. Mullins,* 1 Wash.App. 393, 461 P.2d 895 (1969). Six states, including Texas and three of the above jurisdictions, have enacted special statutes of limitation placing a maximum limitation on the time allowed for discovery. 7 St. Mary's L.J. 770 (1976).

Court of Rhode Island reasoned that where the discovery rule is not allowed, a patient could only protect his legal rights against a doctor's malpractice by submitting to a complete examination by an independent doctor after every treatment or operation. *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968). In the case at hand, Mr. Weaver only discovered the misdiagnosis when he finally did submit to an examination by an independent doctor. His delay in making this discovery resulted from his trust and reliance upon Dr. Robinson's advice. To hold that his cause accrued when the misdiagnosis occurred encourages patients to distrust their doctors. As we stated in *Hays,* "A result so absurd and so unjust ought not be possible."

The steps in the discovery of Mr. Weaver's cause of action are closely akin to the steps taken in *Gaddis.* Like *Gaddis,* Weaver had knowledge of internal pain but had no knowledge of cause. Only after the second myelogram, on April 25, 1972, which revealed the ruptured disc, did Weaver reasonably know of the existence of his cause of action. As in *Gaddis* and *Hays,* the statute of limitations in this case should run from the date of discovery.

It is true that in a misdiagnosis case, a physical object is not involved, but this does not mean that a fraudulent claim may be more easily asserted. As the Hawaii Supreme Court stated in *Yoshizaki v. Hilo Hospital:*

> [T]reatment generally follows diagnosis. The treatment is an objective fact which may be proved or disproved by people other than plaintiff. The fact that the treatment is the kind normally administered for the ailment the doctor allegedly improperly diagnosed is strong evidence of the diagnosis. 50 Haw. 150, 433 P.2d 220 (1967).

We have already applied the discovery rule in cases which did not involve physical objects. *See, Hays v. Hall, supra; Grady v. Faykus, supra.* In our facts, the care and treatment that Dr. Robinson prescribed for Mr. Weaver are safe indicia of the misdiagnosis. In addition to the treatment, the office and hospital records supply further reliable evidence of misdiagnosis.

The New York courts have not limited the discovery rule to foreign object cases. In *Murphy v. St. Charles Hospital,* 35 A.D.2d 64, 312 N.Y.S.2d 978 (1970), a prosthesis was inserted in a patient's hip. Four years later the prosthesis broke, and surgery was required to remove it. In *Dobbins v. Clifford,* 39 A.D.2d 1, 330 N.Y.S.2d 743 (1972), a patient's spleen was severely damaged during a pancreas operation. In both cases, the discovery rule was applied. The court in each case reasoned that discovery was difficult because the malpractice was committed internally. The same reasoning applies to Dr. Robinson's myelogram of Mr. Weaver which was also performed internally.

I would affirm the judgment of the court of civil appeals and make the Texas law consistent with our other malpractice decisions instead of applying the "discovery rule" sometimes and sometimes denying its applicability. The rule announced by the majority encourages a spirit of distrust of one's doctor, it unfairly denies a cause of action before one learns that he has a cause, and it is contrary to the leading cases throughout the country. The rule denies protection to the uninformed victim of the malpractitioner.

I would affirm the judgment of the court of civil appeals.

McGEE, JOHNSON and YARBROUGH, JJ., join in this dissent.