# IN THE SUPREME COURT OF TEXAS

No. 18-0386

GUY JAMES GRAY, PETITIONER,

v.

PATRICIA SKELTON, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

JUSTICE BLACKLOCK, joined by JUSTICE GREEN and JUSTICE BLAND, dissenting.

The Court's decision announces a new rule for tolling the statute of limitations in malpractice suits against criminal defense lawyers. As the Court describes its new rule, "limitations should run during periods when neither a direct appeal nor a post-conviction proceeding is pending." *Ante* at __. I would not toll limitations during post-conviction habeas corpus proceedings, which are potentially innumerable and interminable. Yet even under the rule the Court announces, Patricia Skelton's malpractice claim is barred by the two-year statute of limitations. Six months elapsed between the exhaustion of appeal and Skelton's filing of a habeas corpus petition. Skelton then waited over eighteen months after winning habeas corpus relief to sue for malpractice. Under the Court's new rule, the limitations clock ran for more than two years, which means the claim is barred by limitations.

Instead of following the rule it announces and barring Skelton's claims, the Court immediately expands the rule such that Skelton's claims are not barred. Under the expanded rule, the limitations clock is tolled during direct appeal, during post-conviction proceedings, *and while Skelton waits to see whether the district attorney will re-prosecute her after vacatur of her conviction*. The Court achieves this result by characterizing the time period between a successful habeas corpus action and a renewed prosecution as part of "post-conviction proceedings." *Id.* at __. Of course, the open-ended time **between** habeas corpus proceedings and a prosecutor's decision to renew or abandon prosecution is not itself a part of the habeas corpus proceedings. There is no reason to continue to toll limitations after the defendant's conviction is overturned. At that point, the conviction's bar to the malpractice suit has been eliminated, which also eliminates any rationale for tolling. The result the Court reaches in Skelton's case may seem fair to some, but it creates an unusual and unjustifiable rule for future cases. I respectfully dissent.

\* \* \*

Malpractice suits against lawyers must be commenced "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.003. Skelton sued her criminal defense lawyer nine years after her conviction for forgery of a will, at which point she had discovered, or should have discovered, the wrongful act and injury. *See Childs v. Hussacker*, 974 S.W.2d 31, 40 (Tex. 1998) (applying discovery rule to legal malpractice claim). In most contexts, that would be the end of the matter. Skelton's claim would be seven years late. In the attorney-malpractice context, however, this Court held in *Hughes v. Mahaney & Higgins* that the statute of limitations on a legal malpractice claim is tolled "until all appeals on the underlying claim are exhausted." 821 S.W.2d 154, 157 (Tex. 1991). Applying the *Hughes* rule to Skelton's

case, the two-year limitations clock would have started in March of 2011, when the Court of Criminal Appeals declined to review her case, ending her appeal. Skelton did not sue her lawyer until May of 2016, more than five years after exhaustion of appeals and over three years too late under the *Hughes* rule.

Under the rule the Court announces today, however, Skelton's claim is not three years late because "the limitations period should be tolled during both direct appeals and post-conviction proceedings." *Ante* at __. In other words, "limitations should run during periods when neither a direct appeal nor a post-conviction proceeding is pending." *Id*. The Court suggests this holding flows naturally from the *Hughes* rule, but it is actually a significant expansion of it. Under *Hughes*, limitations are tolled on the malpractice claim "until all appeals on the underlying claim are exhausted." *Hughes*, 821 S.W.2d at 157. The Court applies *Hughes* tolling to habeas corpus actions by conceptualizing habeas corpus as part of the underlying criminal case, a sort of super-appeal available after "direct" appeals are exhausted. But a habeas corpus action is not an "appeal of the underlying claim." It is a collateral attack on a final judgment. *See Ex Parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (describing a habeas corpus action as "in the nature of a collateral attack"). Habeas corpus petitions can be brought long after conviction is final and may be brought one after another successively, in both state and federal court. They are much more akin to bills of review and other collateral attacks on final judgments than to appeals. *Id*. *Hughes* tolling normally applies "during *appeal* of the underlying claim," not during post-appeal collateral attacks. Applying *Hughes* tolling to habeas corpus proceedings expands the *Hughes* rule to include a collateral attack that is not part of "the appeal of the underlying claim."

3

The Court recently rejected another attempt to expand the *Hughes* tolling rule, instead affirming the importance of a narrow, "bright-line" application of *Hughes* tolling in order "to respect the legislative prerogative." *See Erikson v. Renda*, 590 S.W.3d 557, 566–69 (Tex. 2019). We should do so again in this case. The simplest reason to be reluctant to expand *Hughes* tolling to habeas corpus proceedings is that the Legislature has decided to give malpractice plaintiffs *two years* to bring their claims, not *nine years* as in this case, or even longer in future cases. Like all statutes of limitation, this legislative choice guards against "the perils of adjudicating stale claims" and "afford[s] comfort and repose to the defendant." *Godoy v. Wells Fargo Bank*, 575 S.W.3d 531, 538 (Tex. 2019). Equitable tolling of statutes of limitation is commonly understood to be a valid exercise of judicial power,[1] but it is nevertheless a departure from the legislative policy choices reflected in statutes of limitation. Judicially crafted tolling rules mean stale claims may have to be litigated, and defendants statutorily protected from those claims may lose their protection. Thus, "judicial exceptions to limitations statutes cannot be undertaken lightly." *Erikson*, 590 S.W.3d at 569. Such exceptions should be employed with caution because of their potential to undermine the Legislature's policy decisions. Caution is particularly necessary when the judiciary seeks to craft statute-like rules of tolling that essentially rewrite the statute of limitations for a whole category of cases. There is a fine line between judicially amending a statute of limitations, which is always out of bounds, and allowing equitable exceptions to a statute of limitations, which is a historically accepted judicial power. Court-created tolling rules run the risk

---

[1] "It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitations periods in light of this background principle." *Young v. United States*, 535 U.S. 43, 49–50 (2002) (Scalia, J.) (citations and quotation marks omitted).

4

of crossing that line and intruding on the legislative power by replacing the Legislature's judgments about the appropriate limitations period with the Court's.[2]

The *Hughes* rule is well-established, but it is nevertheless a judicial departure from statute. As the Court observed in *Erikson*, any expansion of it should therefore be undertaken cautiously. *Erikson*, 590 S.W.3d at 569. The primary justification for *Hughes* tolling is to protect a malpractice plaintiff from having to take a position in the malpractice case that is inconsistent with its position in the underlying case in which the malpractice allegedly occurred. *Hughes*, 821 S.W.2d at 157. Here, however, Skelton argued in her habeas corpus action that her lawyer provided ineffective assistance of counsel. Many habeas corpus petitions contain such an argument. Obviously, there is very little risk of conflicting positions as between a post-conviction claim for ineffective assistance of counsel and a civil claim for legal malpractice. *Hughes*'s primary justification is absent.

The Court's rationale for expanding *Hughes* tolling to habeas corpus actions does not come from *Hughes* itself. Instead, it comes from *Peeler v. Hughes & Luce*, under which malpractice claims like Skelton's are barred unless the plaintiff has been "exonerated" of the underlying crime. 909 S.W.2d 494, 495 (Tex. 1995). The Court reasons that because habeas corpus proceedings might result in vacatur of the conviction, thereby eliminating the bar to a malpractice claim erected by *Peeler*, the limitations clock for the malpractice claim should be tolled until we know whether habeas corpus relief will be granted. In other words, because Skelton's malpractice claim cannot

---

[2] "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." TEX. CONST. art. II, § 1.

succeed unless she wins her habeas corpus action, her malpractice limitations period should be tolled while her habeas corpus petitions are pending. But "preclusion of a legal remedy alone is not enough to justify a judicial exception to the statute [of limitations]." *Erikson*, 590 S.W.3d at 569 (quoting *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex. 1977)). For all kinds of reasons, the claim a plaintiff has on the day the limitations clock runs out might be a losing claim. Normally, limitations are not tolled to wait and see whether the plaintiff may have a winning claim later. *See id.* But that is essentially the approach the Court adopts today.

By all indications, Skelton got a raw deal. She seems to have been criminally prosecuted and convicted for a non-malicious error of judgment that harmed nobody. Unlike the vast majority of habeas corpus applicants, she won relief. One cannot help but wonder whether the facts of her case and the possible merit of her malpractice claim influence the Court's decision to adopt the rule it announces today. But the rule will not just apply in cases like Skelton's. It will toll limitations in all potential malpractice cases for as long as habeas corpus petitions remain pending, which is often a period of many years or even decades. *See, e.g.*, *Ex Parte Clay*, 2018 WL 636737 (Tex. Crim. App. Jan. 31, 2018) (mem. op.) (granting relief fourteen years after conviction). Habeas corpus proceedings at the state and federal level are subject to a dizzying panoply of procedural restrictions, exceptions to the restrictions, and, of course, exceptions to the exceptions. Each petition can take years to litigate, and multiple petitions are often filed successively. A litigious convict can keep the habeas corpus ball in the air almost indefinitely, leaving criminal defense lawyers under the shadow of potential malpractice claims for many years beyond the two-year period envisioned by the Legislature.

6

There is another way to preserve potentially meritorious claims like Skelton's without automatically tolling the malpractice limitations period for thousands of habeas corpus petitioners, most of whose petitions will be dismissed as groundless. Rather than toll limitations indefinitely for every potential malpractice claimant who seeks post-conviction relief, the Court should simply follow the *Hughes* rule and toll limitations only "until all appeals on the underlying claim are exhausted." *Hughes*, 821 S.W.2d at 157. After "direct" appeal is exhausted, a malpractice claimant can file suit within the limitations period. Under *Peeler*, such a suit cannot succeed unless the plaintiff is "exonerated." 909 S.W.2d at 497–98. But a plaintiff with a pending habeas corpus petition can seek abatement of its timely malpractice action. The court hearing the malpractice case could then decide whether to grant the abatement based on the likelihood the habeas corpus petition will succeed. If the petition has a reasonable chance of success, abatement should be granted and the malpractice claim preserved. If the petition appears groundless, abatement should be denied.

I do not suggest that such an abatement procedure for plaintiffs like Skelton would always result in vindication of valid claims. In practice, some potentially valid malpractice claims would not be allowed to proceed. But that is the nature of statutes of limitation. They often bar claims that would otherwise be meritorious. The Legislature enacts them anyway. The possibility that meritorious claims may be barred by limitations is not a sufficient reason to toll limitations. *Robinson*, 550 S.W.2d at 20 ("The fact that a meritorious claim might thereby be rendered nonassertable is an unfortunate, occasional by-product of the operation of limitations."). In saving one such claim, the Court creates a rule that will keep thousands of other groundless claims afloat

7

and keep criminal defense lawyers on the hook for liability well beyond the two-year period provided by statute.

* * *

For those reasons, I dissent from the Court's expansion of *Hughes* tolling to habeas corpus proceedings. But the Court does not even follow its own rule. As announced, the rule is that "limitations should run during periods when neither a direct appeal nor a post-conviction proceeding is pending." *Ante* at __. If that rule were applied to Skelton's case, the limitations clock ran for over two years; six months passed between the end of the appeal and the filing of the habeas corpus petition, and more than eighteen months passed between the end of the habeas corpus litigation and the filing of the malpractice claim. Skelton's theory of the case, which the Court rejects, is that a fresh, two-year limitations clock for malpractice claims should start whenever post-conviction relief is granted. She brought her malpractice claim almost exactly two years after the court of appeals granted post-conviction relief, apparently counting on being right about how limitations would be calculated. The Court says she was wrong, but it nevertheless allows her claim to proceed. It does so by saying that the time the district attorney takes deciding whether to reinstate the prosecution after the award of habeas corpus relief is itself part of "post-conviction proceedings." Only after the district attorney decides not to re-prosecute would the limitations clock start running again.

No valid justification exists for that rule. The open-ended time period in which the district attorney decided how to react to the vacatur of Skelton's conviction was not a "post-conviction proceeding." There technically remained a criminal indictment pending, but pendency of an indictment is not part of the appeal or the habeas corpus litigation. Most importantly, there is no

8

more conviction, so the reason for tolling in the first place—to give the plaintiff a chance to clear the conviction's barrier to the malpractice claim—no longer exists. Under the Court's understanding of *Peeler*, the pathway for Skelton's malpractice claim was cleared as soon as she received habeas corpus relief. There is no reason to continue to toll the limitations period for an open-ended time period that extends as long as the district attorney allows the charges to remain pending. The Court suggests its approach avoids "putting Skelton's limitations period at the State's mercy." *Ante* at ___. But it does just the opposite. It is only the Court—not the parties, the *Hughes* rule, or the dissent—that would tie the limitations period to the timing of the State's prosecutorial decisions. The Court's odd conflation of the prosecutor's decision-making process with habeas corpus litigation has no grounding in the justifications for *Hughes* tolling, in the applicable statute of limitations, or in the doctrinal baggage associated with *Peeler*. As far as I can tell, it serves only one purpose—to save Skelton's claims from untimeliness. That is a bad reason to make a rule that now applies in all future cases.[3]

I respectfully dissent.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** February 21, 2020

---

[3] Because I conclude Skelton's malpractice claim was barred by the statute of limitations no matter what *Peeler*'s "exoneration" requirement means, I would not reach the questions addressed in Part II of the Court's opinion.

9